# In the United States Court of Appeals for the Third Circuit

---

MARQUIS WILSON,
*Plaintiff-Appellant*

*v.*

UNITED STATES OF AMERICA,
*Defendant-Appellee*

---

*On Appeal from the United States District Court for the
Eastern District of Pennsylvania
No. 2:19-cv-04257 (Hon. Gerald A. McHugh)*

---

## BRIEF OF PLAINTIFF-APPELLANT MARQUIS WILSON

CLAIRE R. CAHILL
 *Counsel of Record*
JULIA E. FINE
WILLIAMS & CONNOLLY LLP
 *680 Maine Avenue SW
 Washington, DC 20024
 (202) 434-5000
 ccahill@wc.com*

***COURT-APPOINTED PRO BONO COUNSEL FOR APPELLANT***

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

STATEMENT OF JURISDICTION .................................................................2

STATEMENT OF THE ISSUE ..........................................................................3

STATEMENT OF RELATED CASES AND PROCEEDINGS ...................3

STATEMENT OF THE CASE ...........................................................................3

    A.    Factual Background ........................................................................3

    B.    Procedural History .........................................................................5

STANDARD OF REVIEW ................................................................................12

SUMMARY OF ARGUMENT .........................................................................13

ARGUMENT .......................................................................................................15

I.    Mr. Wilson Demonstrated His Need for Discovery ...............................15

    A.    The Information Sought .................................................................17

    B.    How Discovery Would Preclude Summary Judgment ................18

        1.    *Expert Testimony* ...............................................................19

        2.    *Medical Records* ................................................................28

    C.    Why Discovery Was Not Obtained ...............................................34

II.    The District Court Erred by Not Addressing Mr. Wilson's Rule 56(d) Request ........................................................................................36

CONCLUSION ....................................................................................................41

JOINT APPENDIX, VOLUME I .............................................................. JA-1

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................24

*Bearfield v. Hauch*, 595 A.2d 1320 (Pa. Super. Ct. 1991)..................32

*Bisher v. Lehigh Valley Health Network, Inc.*,
    265 A.3d 383 (Pa. 2021).......................................................26

*Bradley v. United States*, 299 F.3d 197 (3d Cir. 2002) ......................37

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................15

*Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000) ...................23

*CNA v. United States*, 535 F.3d 132 (3d Cir. 2008)......................6, 20

*Corley v. United States*, 11 F.4th 79 (2d Cir. 2021) .........21, 22, 23, 25

*Doe v. Abington Friends Sch.*, 480 F.3d 252 (3d Cir. 2007)...........15, 17, 34, 36

*Dowling v. City of Philadelphia*, 855 F.2d 136 (3d Cir. 1988)........................15

*FDIC v. Meyer*, 510 U.S. 471 (1994) .....................................13, 20, 23

*Fessenden v. Robert Packer Hosp.*,
    97 A.3d 1225 (Pa. Super. Ct. 2014)..............................29, 31, 32

*Gallegor v. Felder*, 478 A.2d 34 (Pa. Super. Ct. 1984) .................29, 31

*Gallivan v. United States*, 943 F.3d 291 (6th Cir. 2019) .............23, 24, 25

*Garrett v. Wexford Health*, 938 F.3d 69 (3d Cir. 2019) ...................17

*Goodman v. Diggs*, 986 F.3d 493 (4th Cir. 2021)..............................40

*Gradel v. Inouye*, 421 A.2d 674 (Pa. 1980) ...................................32

*Graham v. Lewinski*, 848 F.2d 342 (2d Cir. 1988) ............................39

*Griffith v. Wainwright*, 772 F.2d 822 (11th Cir. 1985) ....................39

*Gruber v. Owens-Illinois Inc.*, 899 F.2d 1366 (3d Cir. 1990)............27

*Hart v. City of Philadelphia*, 779 F. App'x 121 (3d Cir. 2019) .........38

*Hightower-Warren v. Silk*, 698 A.2d 52 (Pa. 1997)..........................29

*Hudson v. Hardy*, 412 F.2d 1091 (D.C. Cir. 1968).............................39

*In re Avandia Mktg., Sales, & Prods. Liab. Litig.*,
    945 F.3d 749 (3d Cir. 2019) ..........................................36

*Jones v. Harrisburg Polyclinic Hosp.*, 437 A.2d 1134 (Pa. 1981)...........*passim*

*Jones v. Montefiore Hosp.*, 431 A.2d 920 (Pa. 1981).........................32

*Kitt v. United States*, 756 F. App'x 114 (3d Cir. 2018) ....................29

*Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) ......................39

*Laudenberger v. Port Auth. of Allegheny Cnty.*, 436 A.2d 147 (Pa. 1981)......25

*Leonard v. St. Joseph's Hosp.*,
    37 Pa. D. & C. 3d 150 (Pa. Ct. Com. Pl. 1984)..................29

Cases—continued:

*Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982) ................................39

*Liggon-Redding v. Est. of Sugarman,*
    659 F.3d 258 (3d Cir. 2011) ..............................17, 21, 22, 23

*Lunderstadt v. Colafella*, 885 F.2d 66 (3d Cir. 1989).........................37

*Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239 (3d Cir. 2013) ...............36, 40

*McCaa v. Hamilton*, 959 F.3d 842 (7th Cir. 2020) ............................35

*McCool v. Dep't of Corr.*, 984 A.2d 565 (Pa. Commw. Ct. 2009) ..............27

*Mitzelfelt v. Kamrin*, 584 A.2d 888 (Pa. 1990)............................32, 33

*Montgomery v. Pinchak*, 294 F.3d 492 (3d Cir. 2002)..........................30

*Parham v. Johnson*, 126 F.3d 454 (3d Cir. 1997).............................36

*Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021).............................23, 25

*Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121 (3d Cir. 2022) ...............27

*Quinby v. Plumsteadville Fam. Prac., Inc.,*
    907 A.2d 1061 (Pa. 2006)................................................6, 18, 21

*Radich v. Goode*, 886 F.2d 1391 (3d Cir. 1989).............................37

*Rainey v. Varner*, 603 F.3d 189 (3d Cir. 2010)................................17

*Renchenski v. Williams*, 622 F.3d 315 (3d Cir. 2010)..........................39

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975)..........................39

*Schmigel v. Uchal*, 800 F.3d 113 (3d Cir. 2015)...........................*passim*

*Shelton v. Bledsoe*, 775 F.3d 554 (3d Cir. 2015)......................16, 36, 40

*Shields v. United States*, 436 F. Supp. 3d 540 (D. Conn. 2020) .................21, 24

*Sikora v. UPMC*, 876 F.3d 110 (3d Cir. 2017) .............................13

*Smith v. Yohe*, 194 A.2d 167 (Pa. 1963) ................................31

*St. Surin v. V.I. Daily News, Inc.*, 21 F.3d 1309 (3d Cir. 1994) ...........12, 13, 37

*Swiderski v. Harman*, 336 F.R.D. 98 (E.D. Pa. 2020).......................35

*Toogood v. Rogal, D.D.S., P.C.*, 824 A.2d 1140 (Pa. 2003)................30

*Tundo v. County of Passaic*, 923 F.3d 283 (3d Cir. 2019)................34

*United States v. Neustadt*, 366 U.S. 696 (1961) ...........................20

*United States v. Ninety-Three Firearms*, 330 F.3d 414 (6th Cir. 2003) .........39

*Young v. United States*, 942 F.3d 349 (7th Cir. 2019)...................23, 25

*Zolk v. Simon*, 44 Pa. D. & C. 3d 533 (Pa. Ct. Com. Pl. 1987) ...........33

## STATUTES AND RULES

28 U.S.C.

§ 1291 ............................................................................3
§ 1331 ............................................................................3
§ 1346 .......................................................3, 6, 20, 22
§ 2674 ............................................................................6

Federal Rules of Civil Procedure

8 .............................................................................23, 24
9 .............................................................................23, 24
11 ...........................................................................23, 24
12 .....................................................................23, 24, 25
56 ...................................................................... *passim*

Pennsylvania Rules of Civil Procedure

129 .............................................................................26
1042.3 ................................................................ *passim*
1042.7 ....................................................................7, 25

## OTHER AUTHORITIES

10B Charles Alan Wright & Arthur R. Miller,
    *Federal Practice & Procedure* (4th ed.) ....................16
Black's Law Dictionary (3d ed. 1933) ............................20
Cyclopedic Law Dictionary (3d ed. 1940) ......................21
Restatement (2d) of Torts § 328D (1965) ..................28, 32

## INTRODUCTION

Marquis Wilson repeatedly complained about pain and swelling in his right testicle to the medical staff at the Philadelphia Federal Detention Center. The staff examined him and confirmed that the large lump could be cancerous. Yet for months, they did nothing else to diagnose or treat him. Only after Mr. Wilson's transfer to a prison facility was he diagnosed with stage two testicular cancer, requiring major surgery that resulted in the loss of his reproductive functions. Mr. Wilson alleged in his complaint under the Federal Tort Claims Act (FTCA) that this outcome resulted because of the detention center's initial failure to diagnose and treat his cancer. The United States denied those allegations. In a normal federal case, the next step would have been for Mr. Wilson to pursue discovery to confirm his allegations. But he never got that chance.

The same day that the government answered Mr. Wilson's complaint, it moved for summary judgment. It claimed it was entitled to summary judgment only because Mr. Wilson lacked the expert evidence necessary to prevail on a medical negligence claim under the FTCA. Mr. Wilson, of course, did not have an expert or any other evidence beyond his own testimony. The parties had not yet begun discovery. The government nonetheless urged the court to

dispense with discovery, based on a misconception that Pennsylvania Rule of Civil Procedure 1042.3(a) precluded Mr. Wilson from presenting expert testimony at summary judgment or trial. Mr. Wilson responded to the summary judgment motion by asking the court to move forward with discovery. He wanted to obtain expert testimony and access to his medical records and, he argued, he would be allowed to use this evidence in later stages of the case.

The Federal Rules of Civil Procedure anticipate such a response. If a nonmovant answers a summary judgment motion with an affidavit explaining why he cannot present essential evidence to oppose the motion, the district court may delay or deny the summary judgment motion and allow time for discovery. Fed. R. Civ. P. 56(d). Mr. Wilson's filings met the substantive requirements of that rule. Yet the district court inexplicably ignored Mr. Wilson's request for discovery and granted summary judgment for the government. That, as this Court has repeatedly stated, is an abuse of discretion. The Court should thus vacate the summary judgment order and remand for Mr. Wilson's case to proceed to discovery.

## STATEMENT OF JURISDICTION

Mr. Wilson filed a *pro se* complaint in the U.S. District Court for the Eastern District of Pennsylvania under the Federal Tort Claims Act, 28

U.S.C. § 2671, *et seq.* The district court thus had jurisdiction under 28 U.S.C. §§ 1331 and 1346. The district court granted summary judgment for the government on April 26, 2022, *see* JA 4, and Mr. Wilson timely noticed his appeal on May 11, 2022, *see* JA 1. This court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court erred by granting the government's summary judgment motion before the parties conducted any discovery, even after the plaintiff requested discovery under Federal Rule of Civil Procedure 56(d). *See* JA 79-80.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case was not previously before this Court. Mr. Wilson is unaware of any related cases currently pending before the Court.

## STATEMENT OF THE CASE

### A. Factual Background[1]

Marquis Wilson entered the Federal Detention Center in Philadelphia, Pennsylvania, as a pretrial detainee in May 2014. JA 17. After about three

---

[1] These facts come from allegations in Mr. Wilson's complaint and later filings and the government's answer. Because no discovery has occurred in this case—an issue that is the focus of this appeal—there is no record evidence.

years there, he started to experience pain in his right testicle and noticed a growing lump. JA 17. He reported the lump to the detention center's medical staff and, in November 2017, was "finally seen" by a medical team. JA 17. The staff "acknowledged that a lump in that area was probably cancerous" but, according to Mr. Wilson, did "nothing else to diagnose, treat or otherwise care" for him.[2] JA 17.

Over the next several weeks, Mr. Wilson tried to receive medical attention for his "worsening condition." JA 17. He submitted several electronic notices to the medical staff, wrote to the U.S. Marshals Service, and even spoke with the warden—all to no effect. JA 17. By the end of the month, the lump had grown to be "grapefruit-sized." JA 17.

Mr. Wilson spent two more months at the detention center. On February 5, 2018, following his sentencing, he was transferred to the Bureau of Prisons' custody at the U.S. Penitentiary, Allenwood facility in Allenwood, Pennsylvania. JA 17, 55. Allenwood medical staff examined him the next day and commented that the size of the swelling of his testicle was "unusual." JA 17.

---

[2] The government asserts that the medical staff "ordered, among other things, a diagnostic ultrasound of Wilson's scrotum," and denies Mr. Wilson's other allegations. JA 55.

A short time later, a doctor met with Mr. Wilson and ordered an ultrasound. JA 18.  On February 19, a urologist confirmed that Mr. Wilson indeed had testicular cancer.  JA 18, 56.  Just two days later, Mr. Wilson underwent surgery to remove his right testicle.  JA 56.

The Allenwood medical staff told Mr. Wilson that his cancer "should have been treated earlier for best results."  JA 18.  By February, his cancer had advanced to stage two, leaving no option but chemotherapy and the surgical removal of his testicle.  JA 18, 29-30.  Mr. Wilson claims that had his cancer been caught and addressed at stage one, treatment would not have involved chemotherapy and the invasive surgery (which required entry into his abdomen and removal of additional cancerous lymph nodes) would not have "impaired and permanently damaged his ejaculatory … function."  JA 30; *see also* JA 18, 41.

### B.    Procedural History

1.  After pursuing administrative remedies, Mr. Wilson sued the United States in the U.S. District Court for the Eastern District of Pennsylvania for medical negligence under the FTCA.  JA 14-16, 18, 54.  The FTCA waives the United States' sovereign immunity for personal injury tort claims "under circumstances where the United States, if a private person, would be liable to the

claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1), making the United States "liable … in the same manner and to the same extent as a private individual under like circumstances," *id.* § 2674. The state tort law where the "act or omission occurred" supplies the cause of action. *CNA v. United States*, 535 F.3d 132, 141 (3d Cir. 2008) (citation omitted).

As all events occurred in Pennsylvania, Mr. Wilson needed to satisfy all elements of Pennsylvania's medical negligence cause of action to prevail on his FTCA claim. His complaint thus needed to allege (1) a duty owed by the medical professional to the patient, (2) the breach of that duty, (3) that the breach was the proximate cause of the injury, and (4) that the damages suffered directly resulted from the harm. *Quinby v. Plumsteadville Fam. Prac., Inc.*, 907 A.2d 1061, 1070 (Pa. 2006). Typically, to prove medical negligence, plaintiffs must present expert testimony about duty, breach, and causation. *Id.* at 1070-71. But where "laymen can reasonably draw the inference or conclusion of negligence," the theory of *res ipsa loquitur* allows plaintiffs to forgo an expert. *Jones v. Harrisburg Polyclinic Hosp.*, 437 A.2d 1134, 1138 (Pa. 1981).

2. Mr. Wilson's *pro se* complaint pleaded the elements of medical negligence. Yet shortly after Mr. Wilson brought suit, the government filed a notice

stating that it intended to seek dismissal of his complaint because he had not filed a "certificate of merit … as required" by Pennsylvania Rule of Civil Procedure 1042.3(a).  JA 25.  That local rule of civil procedure requires plaintiffs alleging professional negligence in Pennsylvania courts to "file with the complaint or within sixty days after the filing of the complaint" a "certificate of merit" certifying:

> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3(a).  Under the Pennsylvania procedural rules, if plaintiffs fail to file the certificate within the allotted time, defendants may seek a judgment *non pros*—essentially, dismissal without prejudice.  Pa. R. Civ. P. 1042.7; *Schmigel v. Uchal*, 800 F.3d 113, 117 & n.5 (3d Cir. 2015).

The district court set a deadline for Mr. Wilson "to take a position on

whether a Certificate of Merit will be filed," and later granted further extensions at Mr. Wilson's request.[3]  Docs. 12, 13, 15.  By April 2020, the onset of the COVID-19 pandemic made further extensions necessary.  *See* Doc. 17.  In October 2020, the district court denied Mr. Wilson's fifth request for an extension and the government promptly moved to dismiss based on Mr. Wilson's failure to file a certificate of merit.  Docs. 22, 23.

In response to the motion to dismiss, Mr. Wilson explained that he would like to have an expert testify to his deficient medical care, but "concede[d] to the impossibility" of obtaining a medical expert "in the midst of a [g]lobal [p]andemic" that had caused prison lockdowns.  JA 31-32.  "[U]nder protest," he stated that his medical records would "obviously" demonstrate that his injury "was not inevitable and happened as a result of Defendant's negligence," and he could prove his claim without expert testimony "at this juncture."  JA 29-30.

---

[3] The district court took "no position … as to whether Plaintiff [was] legally required to file a Certificate of Merit given the claims asserted and facts alleged."  Doc. 12.

The government treated Mr. Wilson's response to its motion to dismiss as a certificate of merit attesting under Rule 1042.3(a)(3) that "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim." JA 48. It thus withdrew its motion to dismiss and filed an answer, denying several of the allegations in Mr. Wilson's complaint. JA 48, 53-59.

3. The same day it filed its answer, the government moved for summary judgment. Mr. Wilson, it said, had "admit[ted]" he would not offer expert evidence. JA 68. His "certification" under Pennsylvania Rule of Civil Procedure 1042.3(a)(3) that expert testimony was unnecessary thus "precluded [him] from offering expert testimony in this case on the questions of standard of care and causation." JA 69. An explanatory note to that rule states:

> In the event that the attorney certifies under subdivision (a)(3) that an expert is unnecessary for prosecution of the claim, in the absence of exceptional circumstances the attorney is bound by the certification and, subsequently, the trial court shall preclude the plaintiff from presenting testimony by an expert on the questions of standard of care and causation.

Pa. R. Civ. P. 1042.3(a)(3), Note; *see* JA 69 & n.3. Further, the government maintained, Mr. Wilson's suit was not the type that could be proven under a *res ipsa loquitur* theory. JA 71. Because Mr. Wilson needed expert testimony to prove elements of his claim but was precluded from presenting that testimony, the government contended it was entitled to summary judgment.

Mr. Wilson responded by asking the district court to "move forward with discovery." JA 79. While he had no evidence beyond his own testimony to present in response to the motion, discovery would allow him to find an expert. And even if the Pennsylvania rules would normally preclude him from presenting expert testimony at a later stage, he noted that a "filing under [Rule 1042.3(a)(3)] allows a case to proceed to discovery, leaving the consequences of the plaintiff's decision to be dealt with at a later stage of litigation." JA 79 (cleaned up). Mr. Wilson argued that he had good reason for failing to obtain expert testimony up until that point: the COVID-19 pandemic. JA 79. "[E]xceptional circumstances" would thus "satisfy the standard for a medical expert to be available later." JA 79. Finally, Mr. Wilson noted that the "medical documents chronicled by the [Bureau of Prisons] while and since [he had] been in its custody" would substantiate his allegations. JA 79.

The district court *sua sponte* reconsidered Mr. Wilson's earlier request for appointed counsel, listed the case on the court's *pro bono* panel, and postponed all deadlines. Docs. 31, 32. But after the case sat on the *pro bono* list for a year, Mr. Wilson asked to move forward without counsel. Doc. 40 at 2.

4. Soon after removing Mr. Wilson's case from the *pro bono* list, the district court granted the government's summary judgment motion. JA 4.

The court acknowledged that the parties had not conducted any discovery and that the government "denie[d] various facts." JA 8 n.1. But it nevertheless determined that the "material facts essential to [Mr. Wilson's] claim" were not in dispute. JA 8 n.1. The detention center's medical staff examined a swelling in his testicle in November 2017, Mr. Wilson sent messages to the medical staff about his condition, and he did not receive an ultrasound, diagnosis, or surgery until his transfer to Allenwood in February 2018. JA 8 n.1.

The court noted the growing body of authority that suggests that state certificate of merit requirements do not apply in FTCA actions. JA 8-9 n.2. But it did not resolve that issue. Regardless of whether Mr. Wilson needed to comply with Pennsylvania Rule of Civil Procedure 1042.3(a), the court explained, he still intended to prove his case without an expert, relying on the *res ipsa loquitur* doctrine. JA 8-9. Mr. Wilson thus needed to show, without expert testimony, that his injury would not usually occur absent negligence and that the evidence sufficiently eliminates other causes of the harm. JA 9-10.

The court agreed that Mr. Wilson did not need expert testimony to establish that the detention center's response to his swollen testicle was "unreasonabl[y] delay[ed]." JA 10. After all, "[t]he fact that tumors can be cancerous and the importance of diagnosing them promptly is within common lay

knowledge." JA 11. But the court found that, without an expert, Mr. Wilson could not show that the delay allowed his cancer to spread, demanding increased chemotherapy and abdominal surgery. JA 11-12. Only an expert could "sufficiently eliminate[]" other potential causes of Mr. Wilson's injuries. JA 12.

The court did not mention Mr. Wilson's claim that his medical records would show that the detention center's delayed treatment caused his harm. Nor did it resolve or even acknowledge Mr. Wilson's request for discovery.

5. Mr. Wilson timely appealed. JA 1. After screening his case, this Court ordered appointment of *pro bono* counsel and asked the parties to address, "among any other issues: (1) whether Pennsylvania Rule of Civil Procedure 1042.3(a) applies to actions brought under the FTCA; and (2) whether the District Court erred by failing to allow for discovery before granting summary judgment in favor of the defendant." App. Doc. 9.

## STANDARD OF REVIEW

Where, as here, "an order granting a motion for summary judgment is attacked as premature," this Court reviews the "district court's refusal to delay" its decision for abuse of discretion. *St. Surin v. V.I. Daily News, Inc.*, 21 F.3d 1309, 1313 (3d Cir. 1994). But the Court's review of the substance of such

a summary judgment order is plenary. *Id.* And it reviews any legal questions *de novo.* *Sikora v. UPMC*, 876 F.3d 110, 113 (3d Cir. 2017).

## SUMMARY OF ARGUMENT

I. The district court erred by prematurely granting summary judgment before discovery. Mr. Wilson opposed the government's motion, asking the court to delay granting summary judgment until after discovery. He established his legitimate need for discovery, meeting all the substantive requirements of Federal Rule of Civil Procedure 56(d).

A. Mr. Wilson still had evidence he wanted to pursue through discovery: expert testimony and his medical records.

B. Mr. Wilson needed expert testimony and his medical records to respond effectively to the government's summary judgment motion. First, obtaining expert testimony would directly rebut the government's argument that it was entitled to summary judgment because he lacked expert testimony. The government incorrectly argued that Pennsylvania Rule of Civil Procedure 1042.3(a) would prevent Mr. Wilson from relying on expert testimony because he had stated he could prove his case without an expert. The FTCA incorporates state law only to the extent it is a "source of substantive liability," *FDIC v. Meyer*, 510 U.S. 471, 478 (1994), which Pennsylvania Rule 1042.3(a) is not.

Even if it were, Rule 1042.3(a) does not prevent *pro se* litigants from presenting expert testimony at later stages of the case—particularly when "exceptional circumstances," like COVID-19, kept the litigant from obtaining an expert earlier.

Second, Mr. Wilson's medical records would help show that he could prevail without expert testimony under the *res ipsa loquitur* doctrine. Courts need a record to evaluate the legitimacy of a *res ipsa loquitur* argument; the district court here had none. Evidence, like Mr. Wilson's medical records, might bolster a juror's intuition that the failure to treat his cancer swiftly allowed it to spread and caused avoidable harm. A lay jury knows that large, potentially cancerous lumps must be diagnosed and treated promptly.

C. Mr. Wilson had legitimate reasons for not seeking discovery earlier. The COVID-19 pandemic created logistical hurdles in obtaining an expert. And because the government moved for summary judgment the same day it filed its answer, Mr. Wilson had almost no opportunity to seek discovery.

II. The district court abused its discretion by not addressing Mr. Wilson's Rule 56(d) request for discovery, which courts must do before granting summary judgment. Mr. Wilson's failure to file an affidavit did not free the district court of that obligation. Mr. Wilson presented an "exceptional case"

that warranted the court's consideration of his request because his filing—construed liberally—constructively complied with Rule 56(d). The parties had conducted no discovery. And Mr. Wilson had no reason to suspect his discovery period would close unless he filed an affidavit.

## ARGUMENT

Summary judgment "presupposes the existence of an adequate record." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007). Indeed, as a default, courts are "obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Dowling v. City of Philadelphia*, 855 F.2d 136, 139 (3d Cir. 1988); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Yet here the district court prematurely granted summary judgment without *any* discovery, even though Mr. Wilson identified relevant evidence that would have helped him defeat the government's motion. Worse, the court ignored Mr. Wilson's Rule 56(d) request to pursue discovery altogether. That was an abuse of discretion.

## I.    Mr. Wilson Demonstrated His Need for Discovery

The modern Federal Rules of Civil Procedure allow parties to move for summary judgment at any time shortly after the complaint is filed. They also allow parties opposing summary judgment to respond by explaining why they

lack sufficient evidence to oppose the motion and to ask the court to delay ruling on the motion.

Rule 56(d) allows a nonmovant to "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).[4]  The filing need not present any proof; "it is enough if [the nonmovant] shows the circumstances which hamstring him in presenting that proof by affidavit in opposition to the motion."  10B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2740 (4th ed.) (citation omitted).  In response, the court may (1) defer or deny the summary judgment motion, (2) allow time for discovery, or (3) issue another "appropriate order." Fed. R. Civ. P. 56(d)(1)-(3).  Courts are "rarely justified in granting summary judgment" if discovery is incomplete, unless the Rule 56(d) filing seeks discovery of facts that are immaterial to the summary judgment motion.  *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015).  Thus, courts usually grant proper Rule 56(d) requests "as a matter of course."  *Id.* (citation omitted).  And a court

---

[4] A 2010 amendment to the Federal Rules of Civil Procedure moved Rule 56(f) to 56(d).  Because the rule did not substantively change, precedent referring to Rule 56(f) is "fully applicable to current Rule 56(d)."  10B Wright & Miller, *Federal Practice & Procedure* § 2740.

necessarily abuses its discretion by ruling on summary judgment without first addressing a Rule 56(d) request to delay ruling pending discovery.  *Id.*

A Rule 56(d) response to a summary judgment motion and accompanying affidavit should "detail[] what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained."  *Doe*, 480 F.3d at 255 n.3 (citation omitted).  Mr. Wilson's response to the government's summary judgment motion did so—especially when "liberally construed" as *pro se* filings must be.  *See Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011); *Rainey v. Varner*, 603 F.3d 189, 200 (3d Cir. 2010) (considering what *pro se* filings can be "fairly" read to say).

## A.     The Information Sought

Mr. Wilson's response to the government's summary judgment motion, though not citing Rule 56(d), centered on his need for discovery.  *See Garrett v. Wexford Health*, 938 F.3d 69, 81 n.17 (3d Cir. 2019) (noting this Court's "policy of considering motions based on their substance rather than their title").  Indeed, his first sentence "ask[ed] th[e] court to move forward with discovery."  JA 79.

He then identified two pieces of evidence he wished to obtain through discovery. The first was expert testimony. The government's motion had said Mr. Wilson "admit[ted] he [would] not offer any expert evidence." JA 68. Mr. Wilson explained that this was incorrect. JA 79. He "would love to have an expert" attest to the harm he had suffered from delayed treatment, but had been unable to obtain one because of the COVID-19 pandemic. JA 79; *see infra* pp. 34-36. Second, he wanted access to the "medical documents chronicled by the BOP while and since [he had] been in its custody." JA 79. Such medical documents, of course, would necessarily form the basis for any future expert opinion. And they could obviate the need for an expert altogether.

## B. How Discovery Would Preclude Summary Judgment

Either expert testimony or medical records, Mr. Wilson contended, would allow him to rebut the government's summary judgment motion. After all, plaintiffs have two avenues to prove medical negligence under Pennsylvania common law: they can either offer expert evidence on duty, breach, and causation, or show under a *res ipsa loquitur* theory that laymen can reasonably infer negligence. *See Quinby v. Plumsteadville Fam. Prac., Inc.*, 907 A.2d 1061, 1070-71 (Pa. 2006); *Jones v. Harrisburg Polyclinic Hosp.*, 437 A.2d 1134,

1138 (Pa. 1981). By cutting off discovery at the outset, the district court prevented Mr. Wilson from pursuing either route.

### 1. *Expert Testimony*

As Mr. Wilson observed, the government's motion hinged on the argument that "without an expert the plaintiff's claim cannot be proven." JA 79; *see* JA 68 ("Without expert medical evidence, Wilson's negligent medical treatment claim fails as a matter of law."). Expert testimony would thus preclude the grant of summary judgment on that basis.

The government, though, contended discovery was "not necessary" and "would not change the ultimate result." JA 67 n.1. Even if Mr. Wilson received time to obtain expert testimony, the government maintained that he had certified under Pennsylvania Rule of Civil Procedure 1042.3(a)(3) that an expert was unnecessary and, as a result, was precluded from using expert testimony later in litigation. JA 69-70 & n.3. Not so. Mr. Wilson could have presented expert testimony later, if he had time to obtain it, because Rule 1042.3(a) does not apply in FTCA lawsuits. And even if Rule 1042.3(a) did apply in FTCA lawsuits, its plain text would not have precluded Mr. Wilson, a *pro se* litigant, from presenting this evidence.

a. Pennsylvania Rule of Civil Procedure 1042.3(a) is not a state law of "substantive liability." As a result, it does not apply in FTCA actions. The FTCA does not adopt every state law or rule. Instead, it incorporates certain state laws by waiving sovereign immunity "under circumstances where the United States, if a private person, would be *liable* to the claimant in *accordance with the law of the place where the act or omission occurred*." 28 U.S.C. § 1346(b)(1) (emphasis added). The Supreme Court has consistently read this provision to mean that state law provides "the source of substantive liability," *FDIC v. Meyer*, 510 U.S. 471, 478 (1994), or, more succinctly, the "cause of action in an FTCA claim," *CNA v. United States*, 535 F.3d 132, 141 (3d Cir. 2008).

Laws of substantive liability differ from procedural rules. The word "liable" has a well-defined meaning in tort law, which courts presume Congress knew when drafting the FTCA. *See United States v. Neustadt*, 366 U.S. 696, 707 (1961). Under the legal dictionaries existing at the time of the FTCA's enactment, "liable" meant "[b]ound or obliged in law or equity; responsible; chargeable; answerable; compellable to make satisfaction, compensation, or restitution," Black's Law Dictionary 1102 (3d ed. 1933), and "liability" meant "the state of one who is bound in law and justice to do something which may

be enforced by action," Cyclopedic Law Dictionary 660 (3d ed. 1940). Laws of substantive liability are those that determine how the defendant must act and the responsibilities that it has toward the plaintiff. *Corley v. United States*, 11 F.4th 79, 85 (2d Cir. 2021). Procedural rules are the means of enforcing those rights and obligations. *Id.*

Rule 1042.3(a) is irrelevant to whether the government is liable for Mr. Wilson's injuries. Pennsylvania common law determines a defendant's substantive liability for negligence. *See Quinby*, 907 A.2d at 1070. The certificate of merit requirement, tellingly located in Pennsylvania's Rules of Civil *Procedure*, is merely a technical requirement dictating what a plaintiff must do in state court to vindicate his rights; it does not affect his right to bring a cause of action. *See Shields v. United States*, 436 F. Supp. 3d 540, 546-47 (D. Conn. 2020) (holding similar Connecticut certificate requirement is not a substantive law of liability and should not apply in FTCA actions). Indeed, even if a plaintiff fails to file a certificate of merit, the state court dismisses the case without prejudice. *Schmigel v. Uchal*, 800 F.3d 113, 117 & n.5 (3d Cir. 2015). The lack of certificate does not absolve the defendant of liability.

This Court's decision in *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258 (3d Cir. 2011), is not to the contrary. There, in a federal diversity

action, this Court determined that Rule 1042.3(a) "is substantive law under the *Erie* Rule." *Id.* at 265. But while the terminology overlaps, a "substantive law" under *Erie* is not necessarily the equivalent of a "substantive law of liability" under the FTCA. The *Erie* rule aims to ensure that in diversity suits, "the outcome of the litigation in the federal court will be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Schmigel*, 800 F.3d at 119 (alteration adopted) (citation omitted). Courts sitting in diversity thus apply a three-part test "to determine whether a state law is substantive or procedural for purposes of compliance with the *Erie* Rule." *Liggon-Redding*, 659 F.3d at 262.

Using that test, *Liggon-Redding* observed that certificate of merit rules may be outcome-determinative; for instance, if a state-law plaintiff fails to file a certificate, a court may dismiss the action. *Id.* at 264. It thus determined that the rule was "substantive." *Id.* But the plain language of the FTCA makes applicability of state law turn on liability, not outcome: the question is whether the United States is *liable* to the same extent as a private individual under state law, 28 U.S.C. § 1346(b)(1), not whether a tort claim against the United States will result in the same litigation outcome, *see Corley*, 11 F.4th at 87. And under that formulation, even if Rule 1042.3 is a "substantive law

22

under the *Erie* Rule," *Liggon-Redding*, 659 F.3d at 265, it is not a "source of substantive *liability*" under the FTCA, *see FDIC*, 510 U.S. at 478 (emphasis added).

If the Court nonetheless concludes that *Liggon-Redding* controls this question, it should reconsider that precedent *en banc*. Under both the *Erie* rule and the FTCA, valid Federal Rules displace conflicting state laws. *See Chamberlain v. Giampapa*, 210 F.3d 154, 159 (3d Cir. 2000); *Gallivan v. United States*, 943 F.3d 291, 294 (6th Cir. 2019). And "there is now a growing consensus that certificate requirements," like Pennsylvania's, "do not govern actions in federal court, because they conflict with and are thus supplanted by the Federal Rules of Civil Procedure," particularly Rules 8, 9, 11, and 12. *Pledger v. Lynch*, 5 F.4th 511, 518 (4th Cir. 2021); *see also Corley*, 11 F.4th at 88-89; *Gallivan*, 943 F.3d at 293; *Young v. United States*, 942 F.3d 349, 351 (7th Cir. 2019).

Though this Court has already declared there is no conflict between Pennsylvania Rule 1042.3(a) and Federal Rules 8, 9, 11, and 12 for purposes of the *Erie* Rule, *see Liggon-Redding*, 659 F.3d at 262-64; *Schmigel*, 800 F.3d at 122, the Court should reconsider given the growing consensus of its sister circuits. Together, Federal Rules 8 and 11 set minimum pleading standards and

allow a case to proceed beyond the pleading stage if the plaintiff includes a plain statement of the claim and certifies that the factual allegations "will likely have evidentiary support." Fed. R. Civ. P. 8, 11(b)(3). In limited situations—notably, not for professional negligence claims—Rule 9 imposes heightened pleading requirements. Fed. R. Civ. P. 9. And to survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint need only allege enough facts that, if true, would show that the plaintiff has a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). By stating the minimum requirements for pleading, the Federal Rules "implicitly exclude[] other requirements that must be satisfied for a complaint to state a claim for relief." *Gallivan*, 943 F.3d at 293 (quotation omitted).

Yet Pennsylvania Rule 1042.3(a) imposes additional, conflicting requirements. Contrary to Federal Rules 8 and 9, it creates a "*super*-plausibility" standard for professional negligence claims, requiring a plaintiff to "buttress the credibility of otherwise plausible factual allegations with the affidavit of a third-party medical provider to vouch for the soundness of the plaintiff's malpractice allegations." *Shields*, 436 F. Supp. 3d at 548-49. Unlike Federal Rule 11, it mandates that a plaintiff certify not only that his allegations will *likely*

be substantiated by evidence, but also to show that an expert has already substantiated the plaintiff's allegations. And diverging from Federal Rule 12, Pennsylvania Rule 1042.7 allows a defendant to file a judgment of *non pros* (essentially dismissal without prejudice) to be entered against plaintiffs who fail to file certificates of merit, *see* Pa. R. Civ. P. 1042.3, 1042.7; *Schmigel*, 800 F.3d at 117 & n.5, whereas Federal Rule 12(b)(6) only allows for dismissal based on inadequate or implausible allegations. Thus, several circuits now recognize that these certificate rules directly conflict with the Federal Rules by imposing heightened pleading standards that the Federal Rules purposely choose not to require. *See Corley*, 11 F.4th at 88-89; *Pledger*, 5 F.4th at 518; *Gallivan*, 943 F.3d at 293-94; *Young*, 942 F.3d at 351.

b. Even under the government's theory that Rule 1042.3(a) applies in FTCA actions, the rule would not have prevented Mr. Wilson—a *pro se* litigant—from presenting expert testimony later in litigation. To begin, nothing in Rule 1042.3 itself states that an (a)(3) certification precludes later use of expert testimony. That provision appears only in an explanatory note to the rule. And these notes are not binding on courts, as they have not been "officially adopted or promulgated by" the Pennsylvania Supreme Court. *Laudenberger v. Port Auth. of Allegheny Cnty.*, 436 A.2d 147, 151 (Pa. 1981);

Pa. R. Civ. P. 129(e) ("Commentary is not a part of the rule text, but may be used in construing the rule text.").

Further, even taking the note's text at face value, it does not apply when *pro se* litigants file (a)(3) certifications, as the government claims Mr. Wilson did. The plain text says: "[if] *the attorney* certifies under subdivision (a)(3) … *the attorney* is bound by the certification and, subsequently, the trial court shall preclude the plaintiff from presenting testimony by an expert." Pa. R. Civ. P. 1042.3(a)(3), Note (emphasis added). This explicit reference to "the attorney" does not sweep in *pro se* litigants. Indeed, Rule 1042.3 plainly delineates between "the attorney" and an unrepresented plaintiff. *See Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 410 (Pa. 2021) ("[Rule 1042.3] distinguishes between pro se plaintiffs and attorneys and imposes different requirements as to each of them."). Subsection (a), for instance, makes clear that a certificate of merit must be filed by "the attorney for the plaintiff" *or* "the plaintiff if not represented." Pa. R. Civ. P. 1042.3(a). Likewise, subsection (e) prescribes special rules for a plaintiff proceeding under (a)(1) or (a)(2) if "a certificate of merit is not signed by an attorney." Pa. R. Civ. P. 1042.3(e). The rule never uses the word "attorney" to refer generally to a plaintiff. Because an attorney never signed Mr. Wilson's certificate of merit,

the note to (a)(3) would not preclude him from later introducing expert testimony.[5]

Finally, even if this Court holds that Mr. Wilson is bound by the explanatory note, the note does not completely bar the use of expert testimony at later stages of litigation. Instead, it creates a presumption that a plaintiff will be precluded from introducing expert evidence. It leaves open the possibility that the plaintiff, like Mr. Wilson, may later use expert testimony if there are "exceptional circumstances." Pa. R. Civ. P. 1042.3(a)(3), Note. And Mr. Wilson had a strong argument for "exceptional circumstances." He explained at length that the COVID-19 pandemic had prevented him from pursuing an expert. *See, e.g.*, JA 32, 79; *infra* pp. 34-36. But because the court never allowed time for discovery, Mr. Wilson never got to make his case that exceptional circumstances, like COVID-19, existed.

---

[5] At least some Pennsylvania intermediate court decisions have applied the preclusion rule to *pro se* litigants. *See, e.g.*, *McCool v. Dep't of Corr.*, 984 A.2d 565, 571-72 (Pa. Commw. Ct. 2009). But when interpreting Pennsylvania law, "the decisions of the Pennsylvania Supreme Court are the authoritative source." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 125 (3d Cir. 2022) (citation omitted). The Pennsylvania Supreme Court has never addressed the note to Rule 1042.3(a)(3), much less who it covers. The intermediate courts' decisions help this Court predict how the Pennsylvania Supreme Court would rule on an issue but do not bind it. *Gruber v. Owens-Illinois Inc.*, 899 F.2d 1366, 1369 (3d Cir. 1990).

### 2.    *Medical Records*

Mr. Wilson also repeatedly highlighted the relevance of his medical records for responding to the government's summary judgment motion.  These records would show that the detention center staff's failure to diagnose and treat Mr. Wilson's cancer resulted in the cancer's spread and serious abdominal surgery that damaged his ejaculatory and procreational ability.  JA 29-30, 79-80.  And, Mr. Wilson noted, they would obviate the need for expert testimony.  JA 30, 80.  Discovery of his medical records thus may have allowed Mr. Wilson to show the existence of genuine issues of material fact on his *res ipsa loquitur* theory and to defeat the government's summary judgment motion.

The *res ipsa loquitur* doctrine recognizes that "certain factual situations demand" an inference of negligence.  *Jones*, 437 A.2d at 1138.  Under this doctrine, juries may infer that the defendant's negligence caused the plaintiff's harm when (1) the event would not normally occur without negligence; (2) other causes are sufficiently eliminated by the evidence; and (3) the alleged negligence falls within the defendant's duty to the plaintiff.  *Id.* at 1136-37 (citing Restatement (2d) of Torts § 328D (1965)).  And when juries can draw upon

"common lay knowledge that the event would not have occurred without negligence," such as when the medical matter is simple and the lack of care obvious, plaintiffs need not present expert testimony. *Id.* at 1138; *see also Hightower-Warren v. Silk*, 698 A.2d 52, 54 & n.1 (Pa. 1997). So long as the plaintiff meets these three elements, "the question of whether an inference of negligence should be drawn is for the jury." *Fessenden v. Robert Packer Hosp.*, 97 A.3d 1225, 1230 (Pa. Super. Ct. 2014).

Typically, courts decide whether a plaintiff may proceed under *res ipsa loquitur* only after a full record is developed during discovery or at trial. For instance, the trial court in *Leonard v. St. Joseph's Hospital* reviewed depositions, interrogatories, an autopsy report, and the defendant's expert report before holding that a reasonable jury could infer that the decedent's death would not have occurred without the defendants' negligence. 37 Pa. D. & C. 3d 150, 156-58 (Pa. Ct. Com. Pl. 1984) (denying defendants' motion for summary judgment). And in *Gallegor v. Felder*, the court required expert testimony in part because a lay jury would neither understand nor infer negligence from the "complicated medical terminology" in the medical records already in the record. 478 A.2d 34, 37 (Pa. Super. Ct. 1984) (affirming the lower court's entry of a compulsory non-suit at trial); *see also Kitt v. United States*, 756 F.

App'x 114, 117 (3d Cir. 2018) (per curiam) (precluding the plaintiff's *res ipsa loquitur* argument after considering a full summary judgment record including medical records and prison policies). This makes sense: to decide whether a lay jury would understand and infer negligence from a "certain factual situation[]," *see Jones*, 437 A.2d at 1138, or whether the "evidence" eliminates other potential causes of a plaintiff's injury, *see id.* at 1137, there must be evidence to consider.

Yet here the district court rejected Mr. Wilson's *res ipsa loquitur* argument without *any* record. Nor did it even acknowledge that Mr. Wilson's medical records would have helped the court more fairly to consider whether he could establish the *res ipsa loquitur* factors and prove his case without an expert. *Cf. Montgomery v. Pinchak*, 294 F.3d 492, 504 (3d Cir. 2002) (plaintiff bringing deliberate indifference claim "would especially benefit from expert testimony because he lacks the medical records that he might otherwise use to demonstrate his alleged injury to a jury").

Indeed, Mr. Wilson's is the sort of case that might not require an expert. Medical malpractice cases often involve complicated surgical procedures that go awry; these generally require expert testimony about the medical standard of care and whether the physician breached that standard. *See, e.g.*, *Toogood*

*v. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1150 (Pa. 2003); *Gallegor*, 478 A.2d at 36-37. Mr. Wilson, by contrast, received no treatment whatsoever from the detention center staff. After the medical staff examined a lump on his testicle and acknowledged it was likely cancerous, for months they "did nothing else to diagnose, treat or otherwise care for [Mr. Wilson's] worsening condition." JA 17.[6] Just as a lay jury can understand that "sponges are not usually left in a patient's abdomen after surgery absent negligence," *Fessenden*, 97 A.2d at 1232, so too can it understand that doctors do not leave suspicious lumps undiagnosed and untreated absent negligence. For instance, in *Smith v. Yohe*, the Pennsylvania Supreme Court explained that it was a "matter of common knowledge" that a doctor should have taken an X-ray of an elderly patient who slipped and fell. 194 A.2d 167, 173 (Pa. 1963). As the district court acknowledged here, it is "within common lay knowledge" that potentially cancerous lumps should be diagnosed and treated swiftly. JA 11.

To be sure, whether Mr. Wilson's cancer would have spread or whether he would have needed serious abdominal surgery absent delayed diagnosis

---

[6] The government denies this allegation. JA 55. Mr. Wilson's records will reveal the extent of the detention center's medical treatment (if any) and will help clarify the potential need for an expert to establish the standard of care and breach.

and treatment is harder for a lay jury to evaluate. Yet with further discovery, Mr. Wilson may have been able to establish causation without an expert. To start, a jury can certainly tap into a "fund of common knowledge" that delayed cancer diagnosis and treatment may result in the cancer's spread and worse outcomes for the patient. *Jones*, 437 A.2d at 1138; *cf. Bearfield v. Hauch*, 595 A.2d 1320, 1322 (Pa. Super. Ct. 1991) (jury cannot use "ordinary experience and comprehension" to infer that negligence during gallbladder surgery caused a nerve entrapment). And Mr. Wilson's burden is not onerous, as he need not eliminate all other potential causes of his harm beyond a reasonable doubt. *Fessenden*, 97 A.3d at 1231 & n.8, 1232 (citing Restatement, *supra*, § 328D, cmt. f).[7]

---

[7] Some decisions of the Pennsylvania Supreme Court seemingly assume that expert testimony is warranted in cases involving faulty or delayed cancer diagnoses. *See, e.g.*, *Jones v. Montefiore Hosp.*, 431 A.2d 920, 924 (Pa. 1981); *Gradel v. Inouye*, 421 A.2d 674, 679 (Pa. 1980). These cases, however, did not present the question about the necessity of expert testimony; they dealt only with the degree of certainty regarding causation required of expert opinions. *Montefiore Hosp.*, 431 A.2d at 924-25; *Gradel*, 421 A.2d at 679. And they held that certainty is *not required* in cases, like those involving cancer diagnoses, where "irrespective of the quality of the medical treatment, a certain percentage of patients will suffer harm." *Mitzelfelt v. Kamrin*, 584 A.2d 888, 892 (Pa. 1990) (collecting cases). Instead, plaintiffs need only introduce evidence that the defendant's acts "increased the risk of harm" to the plaintiff before a jury may decide whether the "increased risk was a substantial factor in producing

Most importantly, Mr. Wilson argued his medical records would show that the cause of his injuries is "obvious." JA 79. First, the record does not clearly state how long Mr. Wilson waited to see the detention center's medical staff after he reported the lump on his testicle. *Compare* JA 17, *with* JA 55. The longer the wait, the easier it would be for a jury to conclude, without an expert, that the delay caused his condition to worsen. Next, Mr. Wilson claims that the Allenwood medical staff told him that the size of his swelling was "unusual" and that "the lump should have been treated earlier for best results." JA 17-18. The United States denies these allegations. JA 55-56. Beyond substantiating these claims, Mr. Wilson's medical records may also include notes from his physicians about the course of his cancer over time, and whether his abdominal surgery and subsequent loss of ejaculatory and reproductive ability could have been avoided. *Cf. Zolk v. Simon*, 44 Pa. D. & C. 3d 533, 539 (Pa. Ct.

---

the harm." *Id.* (citation omitted). Although that evidence is often expert testimony, *Mitzelfelt* also considered other sources, including testimony from the plaintiff's surgical nurse. *Id.* at 893. Thus, these cases do not squarely foreclose Mr. Wilson from proceeding without expert testimony. His medical records may sufficiently establish that the medical staff's actions increased the risk that his cancer would spread and that he would need serious surgery.

Com. Pl. 1987) (explaining that defendant-physicians' extra-judicial admissions may be sufficient to establish negligence without expert testimony), *aff'd*, 544 A.2d 1050 (Pa. Super. Ct. 1988).

Therefore, discovery could have provided Mr. Wilson multiple paths to defeat summary judgment. Expert discovery would have satisfied the government's argument that Mr. Wilson needed expert testimony to prove his claim. And Mr. Wilson's medical records, viewed in the light most favorable to him, *see Tundo v. County of Passaic*, 923 F.3d 283, 287 (3d Cir. 2019), could have helped establish the three *res ipsa loquitur* elements without an expert.

## C. Why Discovery Was Not Obtained

Mr. Wilson offered legitimate reasons for not seeking discovery earlier. *See Doe*, 480 F.3d at 255 n.3. First, the COVID-19 pandemic posed a particular challenge. Mr. Wilson repeatedly highlighted the "impossibility" of finding an expert "in the midst of a global pandemic (COVID-19) resulting in an institutional lockdown." JA 32 (cleaned up). Because of the pandemic, visitors like medical experts were excluded from the prison. And Mr. Wilson's access to the prison law library was severely restricted. Doc. 30 at 2; *see also* JA 79 (explaining that, because of the pandemic, Mr. Wilson could not interview an expert either at the prison or at a hospital or clinic).

Courts have documented the difficulty that COVID-19 has presented for litigation, especially from prison, and the need to relax certain rules accordingly. As the Seventh Circuit explained, the pandemic affected prisoners' ability "to send and receive mail and packages, to visit the law library, or even to consult with other prisoners for help," so "during this crisis, courts need[ed] to adjust [their] expectations and adapt to new conditions." *McCaa v. Hamilton*, 959 F.3d 842, 847 n.1 (7th Cir. 2020); *see also Swiderski v. Harman*, 336 F.R.D. 98, 103-04 (E.D. Pa. 2020). Mr. Wilson thus faced unprecedented obstacles trying to obtain discovery during a pandemic that upended the typical course and procedures of litigation.

Further, though Mr. Wilson's case was pending on the district court's docket for some time, he had a limited window in which to conduct discovery. His case was effectively stayed for two months at the onset of COVID-19. Doc. 17. The court later stayed all deadlines for a year pending the (ultimately unsuccessful) appointment of *pro bono* counsel in the district court. *See* Docs. 31, 41. And Mr. Wilson was given *no* time for discovery once the government filed its answer, as the government moved for summary judgment the very same day it answered Mr. Wilson's complaint. *See* JA 53, 62. In fact, the district court never set a timeline for discovery. It is understandable that Mr. Wilson,

an "imprisoned *pro se* litigant[]," did not try to obtain discovery without instruction from the district court, all while awaiting appointment of counsel. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013). Indeed, this Circuit instructs courts to "consider a prisoner's predicament in attempting to obtain facts, i.e. the confines of prison." *Parham v. Johnson*, 126 F.3d 454, 460 (3d Cir. 1997).

*       *       *

Mr. Wilson thus satisfied each requirement showing his entitlement to discovery before the district court resolved the summary judgment motion.

## II. The District Court Erred by Not Addressing Mr. Wilson's Rule 56(d) Request

Mr. Wilson met this Court's Rule 56(d) requirements in his summary judgment opposition by identifying what discovery he still needed, how it would affect the motion, and why he had not obtained it. *Doe*, 480 F.3d at 255 n.3. Yet the district court never addressed this request. That was an abuse of discretion. This Court has repeatedly recognized that when a plaintiff files a Rule 56(d) request for discovery in response to a summary judgment motion, a court must consider and resolve that request before granting the motion. *See Shelton*, 775 F.3d at 568; *Doe*, 480 F.3d at 257; *In re Avandia Mktg., Sales, & Prods. Liab. Litig.*, 945 F.3d 749, 761-62 (3d Cir. 2019).

To be sure, Mr. Wilson's Rule 56(d) filing missed one technical requirement. He described the discovery he needed and his reasons for not obtaining it in the filing itself rather than in an accompanying affidavit. But the district court did not reject Mr. Wilson's discovery request on that basis; it ignored the request altogether. And Mr. Wilson's technical mistake did not change the district court's duty to consider his request. This Court has not always required litigants to meet Rule 56(d)'s technicalities. While the Third Circuit generally disfavors finding "constructive compliance" with Rule 56(d), *see Bradley v. United States*, 299 F.3d 197, 207 (3d Cir. 2002), failure to satisfy the rule's technical requirements "is not automatically fatal," *St. Surin v. V.I. Daily News, Inc.*, 21 F.3d 1309, 1314 (3d Cir. 1994). In "exceptional cases," courts consider a litigant's request for discovery even if he did not file a Rule 56(d) affidavit or declaration. *Bradley*, 299 F.3d at 207.

A litigant does not present an exceptional case when she requests discovery that she has already received or that is irrelevant to her claim. *Id.* at 207 n.12. Nor are litigants excused from compliance when they have ample time for discovery yet do not diligently pursue their outstanding discovery requests. *See Radich v. Goode*, 886 F.2d 1391, 1394-95 (3d Cir. 1989); *Lunder-*

*stadt v. Colafella*, 885 F.2d 66, 71 (3d Cir. 1989). But neither situation is present here. To the contrary, Mr. Wilson presented the quintessential case of constructive compliance.

In Mr. Wilson's case, the parties had conducted *zero discovery* by the time of his opposition filing. A panel of this Court recently found an "exceptional circumstance[]" in a case much like this one, *Hart v. City of Philadelphia*, 779 F. App'x 121, 128 (3d Cir. 2019) (per curiam). *Hart* held that, where no discovery had yet occurred, the district court abused its discretion in refusing the *pro se* plaintiff's request for discovery in his summary judgment opposition. *Id.* at 128-29. There, as here, the plaintiff filed neither an affidavit nor a declaration, but he "specified the facts he wanted to explore through discovery and explained why he otherwise lacked access to that information." *Id.* at 128.

Nor was Mr. Wilson derelict in pursuing discovery. The government's motion came unusually early in the typical life cycle of litigation—the same day as its answer, following no discovery. And Mr. Wilson was never put on notice that his window for discovery was close to its end. In similar circumstances, such as when district courts convert a motion to dismiss to a motion for summary judgment, courts must properly notify *pro se* prisoner-plaintiffs

by providing "a copy of Rule 56 and a short summary explaining its import that highlights the utility of a Rule 56[d] affidavit." *Renchenski v. Williams*, 622 F.3d 315, 340 (3d Cir. 2010).[8]  Otherwise, these litigants, who likely would not yet have had a chance to take discovery, might not understand what they must do to preserve that opportunity. *See id.* at 339-40.

Of course, in Mr. Wilson's case, the district court did not *sua sponte* convert a motion to dismiss.  But Mr. Wilson received the government's summary judgment motion at a time when he had no reason to expect that his discovery window was about to close, just like the litigants opposing motions to dismiss that are converted to summary judgment motions.  Yet neither the government nor the district court alerted Mr. Wilson to the consequences of failing to file a proper Rule 56(d) affidavit—another point in favor of finding that his improper filing constructively complied with the rule.

---

[8] Many circuits require district courts or the government to notify *pro se* prisoner-plaintiffs of Rule 56's requirements whenever a summary judgment motion is filed, not only when the district court converts a motion to dismiss. *See, e.g.*, *Graham v. Lewinski*, 848 F.2d 342, 344-45 (2d Cir. 1988); *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam); *United States v. Ninety-Three Firearms*, 330 F.3d 414, 427-28 (6th Cir. 2003); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982); *Klingele v. Eikenberry*, 849 F.2d 409, 411 (9th Cir. 1988); *Griffith v. Wainwright*, 772 F.2d 822, 825-26 (11th Cir. 1985) (per curiam); *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968).

Finally, though Mr. Wilson did not label his filing an affidavit, as a *pro se* litigant, his filings must be construed "liberally." *Mala*, 704 F.3d at 244 (citation omitted). Procedural foot faults are expected for *pro se* litigants, which is why the Fourth Circuit has "not insisted on an affidavit in technical accordance with Rule 56(d) if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary," particularly "where the non-moving party is proceeding pro se." *Goodman v. Diggs*, 986 F.3d 493, 501 (4th Cir. 2021) (cleaned up).

These factors combine to make Mr. Wilson's an "exceptional case" where substance matters more than technical form. Mr. Wilson's filing thus constructively complied with Rule 56(d), and the district court abused its discretion in failing to consider it. And because Mr. Wilson's request sought clearly relevant discovery, *see supra* pp. 18-34, this Court should reverse the district court's premature grant of summary judgment and remand so that Mr. Wilson can engage in discovery. After all, courts are "rarely justified in granting summary judgment" when discovery is merely "incomplete," let alone non-existent. *Shelton*, 775 F.3d at 568.

## CONCLUSION

This Court should vacate the district court's grant of summary judgment and remand the case for Mr. Wilson to pursue discovery or, at the very least, for the district court to consider Mr. Wilson's Rule 56(d) filing in the first instance.

Respectfully submitted,

CLAIRE R. CAHILL
(D.C. BAR NO. 90003724)
    *Counsel of Record*
JULIA E. FINE
WILLIAMS & CONNOLLY LLP
    *680 Maine Avenue SW*
    *Washington, DC 20024*
    *(202) 434-5000*
    *ccahill@wc.com*

FEBRUARY 13, 2023

***Court-Appointed Pro Bono Counsel for Appellant***

# CERTIFICATES OF BAR MEMBERSHIP

I, Claire R. Cahill, court-appointed pro bono counsel for appellant Marquis Wilson, hereby certify pursuant to Third Circuit Rule 28.3(d) that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

*/s/ Claire R. Cahill*
CLAIRE R. CAHILL

I, Julia E. Fine, court-appointed pro bono counsel for appellant Marquis Wilson, hereby certify pursuant to Third Circuit Rule 28.3(d) that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

*/s/ Julia E. Fine*
JULIA E. FINE

# CERTIFICATES OF COMPLIANCE WITH TYPEFACE, WORD-COUNT, ELECTRONIC BRIEF, AND VIRUS-CHECK REQUIREMENTS

I, Claire R. Cahill, certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,889 words, excluding those portions excluded by Fed. R. App. P. 32(f);

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in the proportionally spaced typeface using Microsoft Word 2019 in Century Expanded BT, size 14;

3. The text of the electronic brief filed via ECF is identical to the text of the paper copies that will be delivered to the Court;

4. The electronic copy of this brief filed using this Court's CM/ECF system was scanned for viruses using the Symantec Endpoint Protection version 14.2, and no viruses were detected.

*/s/ Claire R. Cahill*

CLAIRE R. CAHILL

February 13, 2023

## CERTIFICATE OF SERVICE

I, Claire R. Cahill, court-appointed pro bono counsel for appellant Marquis Wilson and a member of the Bar of this Court, certify that, on February 13, 2023, a copy of the attached Brief of Appellant was filed with the Clerk and served on the parties through the Court's electronic filing system. I further certify that all parties required to be served have been served.

/s/ Claire R. Cahill
CLAIRE R. CAHILL

February 13, 2023

# In the United States Court of Appeals for the Third Circuit

---

MARQUIS WILSON,
*Plaintiff-Appellant*

*v.*

UNITED STATES OF AMERICA,
*Defendant-Appellee*

---

*On Appeal from the United States District Court for the Eastern District of Pennsylvania No. 2:19-cv-04257 (Hon. Gerald A. McHugh)*

---

## CORRECTED JOINT APPENDIX
## VOLUME 1 OF 2 | JA-1 TO JA-13

---

BRIAN M. BOYNTON
  *Principal Deputy Asst.*
  *Attorney General*
MARK B. STERN
SUSHMA SONI
  *Attorneys, Appellate Staff*
CIVIL DIVISION, ROOM 7218
U.S. DEPARTMENT OF JUSTICE
  *950 Pennsylvania Ave. NW*
  *Washington, DC 20530*
  *(202) 514-4331*

*Counsel for Appellee*

CLAIRE R. CAHILL
JULIA E. FINE
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue SW*
  *Washington, DC 20024*
  *(202) 434-5000*
  *ccahill@wc.com*

*Counsel for Appellant*

---

*Additional counsel listed on inside cover*

JACQUELINE C. ROMERO
  *United States Attorney*
GREGORY B. DAVID
  *Chief, Civil Division*
MATTHEW E. K. HOWATT
  *Asst. United States Attorney*
  *615 Chestnut St., Suite 1250*
  *Philadelphia, PA 19106*
  *(215) 861-8335*

# TABLE OF CONTENTS

Page

Notice of Appeal (May 10, 2022) ....................................................... JA-1

Order Granting Defendant's Motion for Summary Judgment
(Apr. 26, 2022) ............................................................................. JA-4

Memorandum regarding Order Granting Defendant's Motion for Summary
Judgment (Apr. 26, 2022) ............................................................ JA-5

Clerk of Court
601 Market Street
Philadelphia, PA 19106-9865

                    Civ. No. 19-4257


                                        Date: May 10, 2022


                    NOTICE OF APPEAL

Plaintiff appeal District Court opinion April 26, 2022 which I
receive this opinion on May 2, 2022. Furthermore Plaintiff will
direct the court to Appointment Counsel and FTCA.See(Exhibit A).



                            Respectfully Submitted,


                            Marquis Wilson#71390-066
                            FCI Allenwood Medium
                            P.O. Box. 2000
                            White Deer, PA. 17887

Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARQUIS WILSON,                        :
    **Plaintiff,**                       :
                                        :
    v.                                   :        CIVIL ACTION NO. 19-4257
                                        :
UNITED STATES OF AMERICA,              :
    **Defendant.**                       :

---

McHUGH, J.                                              April 26, 2022

## MEMORANDUM

This is an action brought under the Federal Tort Claims Act by a prisoner who alleges delayed diagnosis of testicular cancer while in custody, resulting in removal of a testicle and other effects that he contends could have been avoided by an earlier diagnosis. The Court was unsuccessful in securing counsel with the result that Plaintiff must proceed *pro se*. He does not have the benefit of expert testimony but argues that it is unnecessary to the prosecution of his claim. As to negligence, Plaintiff may well be correct. But this case involves complex and subtle issues of causation and damages, beyond the competence of a lay factfinder – even a judge - to decide in the absence of expert opinion. I am therefore constrained to grant the motion of the United States for summary judgment.

## I.   <u>Factual Allegations and Procedural Posture:</u>

Plaintiff, Marquis Wilson, has sued under the Federal Tort Claims Act (FTCA) against the United States of America for professional negligence in relation to medical care he received at the Federal Detention Center (FDC) in Philadelphia, Pennsylvania. In 2014, Plaintiff was placed at the FDC as a pretrial detainee. Compl. ¶ 2, ECF 1. At some unspecified point in 2017, he noticed

05/02/2022

INMATE NAME/NUMBER: Marquis Wilson #71390-060   HARRISBURG PA   171
FEDERAL CORRECTIONAL COMPLEX-ALLENWOOD  FCI   11 MAY 2022 PM 1 L
P.O. BOX 2000
WHITE DEER, PA 17887

RECEIVED
MAY 13 2022

MAY 10 2022

Clerk of Court
601 Market Street
Philadelphia, PA 19106-9865

U.S. C.M.S. RAY

Legal Mail          19106-172999                        Legal Mail

**JA-3**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARQUIS WILSON,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 19-4257** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Defendant.** | : | |

## <u>ORDER</u>

This 26th day of April, 2022, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment, ECF 29, is **GRANTED**, for the reasons set forth in the accompanying memorandum.


   /s/ Gerald Austin McHugh
United States District Judge

**JA-4**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARQUIS WILSON,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 19-4257** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Defendant.** | : | |

---

**McHUGH, J.**                                                              **April 26, 2022**

**MEMORANDUM**

     This is an action brought under the Federal Tort Claims Act by a prisoner who alleges delayed diagnosis of testicular cancer while in custody, resulting in removal of a testicle and other effects that he contends could have been avoided by an earlier diagnosis. The Court was unsuccessful in securing counsel with the result that Plaintiff must proceed *pro se.* He does not have the benefit of expert testimony but argues that it is unnecessary to the prosecution of his claim. As to negligence, Plaintiff may well be correct. But this case involves complex and subtle issues of causation and damages, beyond the competence of a lay factfinder – even a judge - to decide in the absence of expert opinion. I am therefore constrained to grant the motion of the United States for summary judgment.

### I.     Factual Allegations and Procedural Posture:

     Plaintiff, Marquis Wilson, has sued under the Federal Tort Claims Act (FTCA) against the United States of America for professional negligence in relation to medical care he received at the Federal Detention Center (FDC) in Philadelphia, Pennsylvania. In 2014, Plaintiff was placed at the FDC as a pretrial detainee. Compl. ¶ 2, ECF 1. At some unspecified point in 2017, he noticed

a lump on his right testicle and complained to FDC medical staff.  *Id*.  ¶ 3.  In November 2017, Plaintiff was evaluated by FDC medical staff, who acknowledged that a lump in that area was probably cancerous.  *Id.* ¶ 4.  By the end of November 2017, Plaintiff alleges that the lump was "grapefruit-sized." *Id.* ¶ 9.  He further alleges that in spite of his repeated communications to FDC staff about his worsening medical condition, no further treatment was provided at the FDC.  *Id*. On February 5, 2018, having been sentenced, Plaintiff was transferred to the Bureau of Prison's USP-Allenwood facility.  *Id.* ¶ 11.  On February 6, 2018, Plaintiff saw Allenwood medical staff and was told that "the size of the swelling was unusual."  *Id*.  An ultrasound was taken and it was determined that the lump was cancerous.  *Id.* ¶ 13.  Plaintiff alleges that Allenwood medical staff told him that the lump "should have been treated earlier for best results but by that point the only course of action was to remove one of Plaintiff's testicles which was done surgically."  *Id*.  The cancer was treated by the surgical removal of Plaintiff's right testicle on February 21, 2018.  *Id*.; Answer ¶ 13, ECF 28.

Mr. Wilson filed his complaint in this case after his administrative complaint was denied. ECF 1.  He  did not file a certificate of merit with his complaint.  The Government contends that Pa. R. Civ. P. 1042.3 applies in actions brought under the FTCA and provided Wilson notice of its intention to move to dismiss the complaint for failure to file a certificate of merit.  Pennsylvania Rule 1042.3 requires that any action alleging professional negligence must be supported by an affidavit of merit warranting that a qualified expert has reviewed the matter and concluded that there is a "reasonable probability" that there was a breach of the applicable standard of care or that expert testimony is unnecessary for prosecution of the claim.  Mr. Wilson was granted multiple extensions of time to take a position on the certificate of merit.  ECF 12, 15, 19.   On October 7, 2020, the Court finally denied an additional request for an extension, noting that Plaintiff had been

granted extensions dating back to December 2019.  Simultaneously, the Court denied Plaintiff's request for appointment of counsel.  ECF 22.

On October 8, 2020, the United States moved to dismiss Wilson's complaint for failure to file a certificate of merit.  ECF 23.   In his response, Mr. Wilson further elaborated on his claim, alleging that because of the delay in diagnosis and surgery, his cancer "advanced to the second stage, [which resulted in] a serious abdominal surgery, which led to plaintiff permanently losing his ejaculatory function, diminishing his procreation ability, on top of the already rigorous chemotherapy regimen Plaintiff suffered."  ECF 24 at 3.  Plaintiff also asked that the Court "treat his reply . . . as a Certification under [Pa. R. Civ. P.] 1042.3(a)(3) that 'expert testimony of an appropriate license [sic] professional is unnecessary for prosecution of claims [sic]' and find that this certificate satisfies the requirement of this rule."  *Id*. at 11.  Wilson emphasized, "Plaintiff unequivocally asserts that his claim of negligence is so patently obvious, that expert testimony is not required…" *Id*. at 11-12.  The government then withdrew its Motion to Dismiss and filed the pending motion for summary judgment.  ECF 26, 29.

After further reviewing the record and Plaintiff's answer to the motion, the Court, *sua sponte,* reconsidered Plaintiff's request for appointment of counsel and listed Plaintiff's case on the Court's Pro Bono Panel for prisoner cases.  ECF 31.  Case deadlines were stayed while the case remained on the panel.  It remained pending for over a year without being taken by an attorney.  In February 2022, Plaintiff communicated that he wanted his case to be removed from the prisoner panel, ECF 40, and Plaintiff was granted 45 days in which to file any additional submissions in response to the Government's motion for summary judgment.  ECF 41.  That period has now elapsed without Plaintiff filing any further materials, rendering the motion for summary judgment ripe for consideration.

## II.   <u>Standard of Review</u>

The party's motion for summary judgment is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).[1]

## III.   <u>Discussion</u>

Under the FTCA, the state law in which the alleged tortious conduct occurred supplies the substantive tort law.  28 U.S.C. § 1346(b)(1).  In Pennsylvania, to state a prima facie cause of action for medical malpractice, a plaintiff must demonstrate the elements of negligence: "a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of harm." *Hightower–Warren v. Silk*, 698 A.2d 52, 54 (Pa. 1997).  "With all but the most self-evident medical malpractice actions there is also the added requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation."  *Quinby v. Plumsteadville Fam. Prac., Inc.*, 907 A.2d 1061, 1070–71 (Pa. 2006).

Regardless of whether Pennsylvania Rule of Civil Procedure 1042.3(a)(3) applies to actions brought under the FTCA, [2]   Plaintiff is proceeding without an expert, relying upon the

---

[1] Although there has been no factual discovery conducted, Defendant's Answer indicates that the material facts here are not in dispute and summary judgment is appropriate. *See* Fed.R.Civ.P. 56 ("Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.")  While I note that Defendant denies various facts, Defendant admits the material facts essential to Plaintiff's claim: that Plaintiff was evaluated by FDC in November 2017 and medical staff noted a swelling in his right testicle at that time, that Plaintiff sent various messages to FDC staff members about his medical condition, and that Plaintiff did not receive an ultrasound, diagnosis, or surgery until his transfer to FCI Allenwood in February 2018.  Answer, ECF 28.

[2] In the context of diversity jurisdiction, the Third Circuit has held that the Pennsylvania certificate of merit requirement is substantive state law that must be followed by federal courts. *Liggon-Redding v. Estates of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011).  It has not addressed whether the certificate of merit requirement applies to an action brought under the FTCA.  Admittedly, it has found the Rule applicable in several non-precedential opinions, *see Cuevas v. United States*, 580 F. App'x 71, 75 (3d Cir. 2014);

doctrine of *res ipsa loquitur* to prove his case.  The Government responds that without the support of an expert Plaintiff cannot prove essential elements of claim, such that it fails as a matter of law.

Where the doctrine of *res ipsa loquitur* properly applies a plaintiff may satisfy the burden of producing evidence of negligence, even in a professional negligence case, by showing that the injury is of a sort that would not have occurred in the absence of the defendant's negligence. *Quinby*, 907 A.2d at 1071.  Pennsylvania has adopted the Restatement (Second) of Torts § 328D, which formulates the evidentiary theory of *res ipsa loquitur* as follows:

> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
>
>> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;

---

*Baumgardner v. Ebbert*, 535 F. App'x 72, 77 (3d Cir. 2013); *Smith v. United States,* 498 F. App'x. 120, 122 (3d Cir. 2012); *Hodge v. U.S. Dep't of Just.*, 372 F. App'x 264, 267 (3d Cir. 2010); *Booker v. United States*, 366 F. App'x 425, 426 (3d Cir. 2010).  Such decisions are not binding.  *United States v. James*, 928 F.3d 247, 254 n.5 (3d Cir. 2019) (noting that "[i]t is contrary to our Internal Operating Procedures, however, to treat non-precedential opinions as having any precedential effect.").  And the fact that there are several non-precedential decisions does not add to their weight.  *Faush v. Tuesday Morning, Inc.,* 808 F.3d 208, 212 n.1 (3d Cir. 2015) (sympathizing with district judge who "understandably relied" on three non-precedential opinions before reversing him, noting their non-binding status).  *Accord, James, supra,* (disregarding the district court's discussion of two nonprecedential cases because of their lack of authority).

It is not intuitively obvious that the Pennsylvania rule should apply in this federal statutory context.  A claim brought under the FTCA, a federal statute that establishes specific procedures for claims against the Government, differs in material ways from actions brought pursuant to the diversity jurisdiction of federal courts.  There are no federal/state forum shopping concerns in FTCA cases, one of the concerns that lies at the heart of an *Erie* analysis.  Similarly, the respect for state law and federalism concerns that characterize *Erie*'s analysis are not present under the FTCA, where Congress has specifically prescribed a mechanism for resolving claims against the federal government.

In precedential opinions, the Second, Fourth, Sixth, and Seventh Circuits have held that a state law certificate of merit requirement as a prerequisite to filing an FTCA medical malpractice action conflicts with the Federal Rules of Civil Procedure.  *Corley v. United States*, 11 F.4th 79, 87-88 (2d Cir. 2021); *Pledger v. Lynch*, 5 F.4th 511, 518 (4th Cir. 2021); *Gallivan v. United States,* 943 F.3d 291, 293–94 (6th Cir. 2019); *Young v. United States*, 942 F.3d 349, 351–52 (7th Cir. 2019); *see also Petrus v. United States*, No. CV 16-53, 2022 WL 910263, at *2 (D.V.I. Mar. 29, 2022) (Savage, J.)  (finding the reasoning of these circuit courts persuasive and holding that Minnesota's certificate of merit requirement did not apply in FTCA case); *Shields v. United States*, 436 F. Supp. 3d 540, 547 (D. Conn. 2020) (holding that Connecticut's certificate of merit requirement does not apply in FTCA action and discussing differences between FTCA and diversity actions in dicta).

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

REST. (SECOND) TORTS § 328D; *Quinby*, 907 A.2d at 1072. Similarly, with respect to causation, expert testimony has been held to be unnecessary where there is an obvious causal relationship between the medical care provided and the patient's injuries, allowing a lay factfinder to rely on common knowledge to infer both negligence and causation. For example, in *Quinby v. Plumsteadville Fam. Prac., Inc.*, 907 A.2d 1061, 1073 (Pa. 2006), the Supreme Court drew a distinction between "medically complex" cases with issues beyond "lay knowledge" where expert testimony is required and "non-complex medical scenario[s]" where the requirement of expert testimony may be dispensed. *Id.* There, it held that a quadriplegic falling from an examination table was in the latter category and warranted charging a jury on *res ipsa loquitur*. *Id.*; s*ee also Fessenden v. Robert Packer Hosp.*, 97 A.3d 1225 (Pa. Super. Ct. 2014) (applying doctrine where sponge was found inside patient's abdomen four years after surgery and patient had not had any later surgical procedures).

On the record here, a fact finder could conclude that there was unreasonable delay in responding to Mr. Wilson's complaints without the benefit of expert testimony. It takes no medical expertise to understand that where cancer is among the possible diagnoses, the standard of care requires prompt attention. Furthermore, under Pennsylvania law, a claim for malpractice can also be sustained under general principles of negligence. *See Incollingo v. Ewing*, 282 A.2d 206 (Pa. 1971), *abrogated on other grounds by Kaczkowski v. Bolubasz*, 421 A.2d 1027 (Pa. 1980). Plaintiff was first evaluated by FDC medical staff in November 2017 for a large, hard swelling in his testicle. By the end of November 2017, Plaintiff alleges that the swelling was the size of a

grapefruit.  In its Answer, the Government denies that the lump was grapefruit sized, but admits that the FDC staff observed that the swelling was "large" and "hard."  Answer ¶ 3.  And though it denies that the FDC failed to diagnose, treat, or care for Plaintiff, the Government does not identify anything else that the FDC medical staff did to follow up on what was observed.  Significantly, treatment progressed rapidly once he was transferred to Allenwood: he arrived at Allenwood on February 5, 2018, was evaluated by Allenwood medical staff on February 6, 2018, had an ultrasound on February 14, 2018, was seen by a urologist and diagnosed with cancer on February 19, 2018, and had surgery on February 21, 2018.  The fact that tumors can be cancerous and the importance of  diagnosing them promptly is within common lay knowledge, and certainly confirmed by the speed with which Allenwood staff acted.

Plaintiff's claim ultimately fails, however, because the consequences of the delay are not self-evident.  Where the issue of causation is complex, expert testimony is required.  *See e. g., Bearfield v. Hauch*, 595 A.2d 1320, 1322 (Pa. Super. Ct. 1991) (holding that, in the absence of a medical expert, the jury had no way to determine whether nerve damage during surgery was the result of negligence, or an unavoidable consequence of the surgery); *Gallegor by Gallegor v. Felder,* 478 A.2d 34, 37 (Pa. Super. Ct. 1984) (denying liability for nerve injury suffered during ear surgery due to complexity of the surgery and lack of expert testimony to link to nerve damage to improper technique); *Mertig v. Booth*, Civil Case No. 11-1462, 2012 WL 1431238, at *2 (E.D. Pa. Apr. 25, 2012) (*res ipsa* inappropriate where alternate causes of infection following surgery could not be eliminated without expert testimony) (Savage, J.) .

This is not a case where a surgeon left a foreign object in a patient's body or operated on the wrong limb. Plaintiff concedes that removal of his testicle was required even with proper care but argues that the delay allowed his cancer to spread and advance to the second stage, which then

required increased chemotherapy and a more invasive abdominal surgery to remove additional cancerous lymph nodes, permanently destroying his ejaculatory function. The delay here was approximately three months. The degree to which the cancer would have spread within the limited window, and the extent of the required surgery, represent complex, nuanced issues. To rely on *res ipsa loquitor*, the evidence must show that "other responsible causes" for Plaintiff's injury are "sufficiently eliminated," which is impossible to determine here without an expert to opine about the nature of Plaintiff's cancer, its rate of growth, the necessary scope of surgical treatment, and side effects that might have resulted even in the absence of any delay.

I am sensitive to the significant burden a pro se prisoner faces in finding and paying for an expert, which is why I reconsidered Plaintiff's request for counsel and listed this case on the prisoner civil rights pro bono panel well beyond the normal timeline and allowed it to remain for nearly one year without success. *See Tabron v. Grace*, 6 F.3d 147, 157, n.7 (3d Cir. 1993) (noting practical restraints on district courts' ability to appoint counsel including lack of funding and limited supply of lawyers, as well as that "courts have no authority to compel counsel to represent an indigent civil litigant.").[3]  In posting the case on this Court's panel, I highlighted the fact that counsel accepting representation could seek reimbursement of expert witness fees through the Court's non-appropriated funds. It remained on the panel until it was removed at Mr. Wilson's request. I cannot say whether an expert would have found causation within such a brief window, or whether representation by counsel would have changed the outcome. I can and must say that, under the controlling legal standard, the United States is entitled to summary judgment.

---

[3] Similarly, although the Third Circuit has recognized the barriers faced by pro se prisoner plaintiffs who have the inability to pay for or obtain expert witnesses and cannot proceed in a civil action without expert testimony, it has held that there is no statutory authority for courts to authorize payment of expert witness fees in civil suits for damages even in cases involving pro se indigent prisoners. *See Boring v. Kozakiewicz*, 833 F.2d 468, 474 (3d Cir.1987).

IV.  **Conclusion**

For the reasons set forth above, I am obligated to grant Defendant's Motion for Summary Judgment in full.  An appropriate order follows.


    /s/ Gerald Austin McHugh
United States District Judge