# In the United States Court of Appeals for the Third Circuit

MARQUIS WILSON,
*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,
*Defendant-Appellee.*

*On Appeal from the United States District Court for the
Eastern District of Pennsylvania
No. 2:19-cv-04257 (Hon. Gerald A. McHugh)*

## REPLY BRIEF OF PLAINTIFF-APPELLANT MARQUIS WILSON

KARI M. LORENTSON
CLAIRE R. CAHILL
    *Counsel of Record*
JULIA E. FINE
WILLIAMS & CONNOLLY LLP
    *680 Maine Avenue SW
    Washington, DC 20024
    (202) 434-5000
    ccahill@wc.com*

***COURT-APPOINTED PRO BONO COUNSEL FOR APPELLANT***

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................1

I.    Mr. Wilson Properly Responded to the Government's Summary
      Judgment Motion by Requesting Discovery.............................................3

      A.    Mr. Wilson Identified His Need for Expert Testimony and
            His Medical Records...........................................................................4

      B.    Mr. Wilson Was Not Precluded from Using Expert
            Testimony to Later Defeat Summary Judgment............................5

      C.    Mr. Wilson Needed His Medical Records to Respond to the
            Government's *Res Ipsa Loquitur* Argument ................................15

      D.    Mr. Wilson Identified the COVID-19 Pandemic as the
            Primary Obstacle in Obtaining Discovery ....................................22

II.   The District Court Incorrectly Ignored Mr. Wilson's Request for
      Discovery and Prematurely Granted Summary Judgment ..................24

      A.    Mr. Wilson Did Not Have an Adequate Opportunity to
            Take Discovery...................................................................................25

      B.    Mr. Wilson Constructively Complied with Rule 56(d).................28

CONCLUSION....................................................................................................31

# TABLE OF AUTHORITIES

Page

Cases:

*Bisher v. Lehigh Valley Health Network, Inc.*,
  265 A.3d 383 (Pa. 2021) ..................................................................13
*Bradley v. United States*, 299 F.3d 197 (3d Cir. 2002) ..................................28
*CNA v. United States*, 535 F.3d 132 (3d Cir. 2008) ......................................11
*Corley v. United States*, 11 F.4th 79 (2d Cir. 2021) ................................11, 12
*Cuevas v. United States*,
  No. 09-cv-43J, 2013 WL 4500470 (W.D. Pa. Aug. 21, 2013),
  *aff'd*, 580 F. App'x 71 (3d Cir. 2014) ............................................18
*Doe v. Abington Friends Sch.*, 480 F.3d 252 (3d Cir. 2007)..........................25
*Donaldson v. Maffucci*, 156 A.2d 835 (Pa. 1959)..........................................19
*Dowling v. City of Philadelphia*, 855 F.2d 136 (3d Cir. 1988)........3, 5, 24, 25
*FDIC v. Meyer*, 510 U.S. 471 (1994) ......................................................10
*Gallegor v. Felder*, 478 A.2d 34 (Pa. Super. Ct. 1984) ..................................19
*Gibson v. United States*, 457 F.2d 1391 (3d Cir. 1972)..................................16
*Gil v. Reed*, 381 F.3d 649 (7th Cir. 2004).................................................17
*Hakeem v. Salaam*,
  No. 3:03-cv-0098, 2007 WL 9757509 (M.D. Pa. Mar. 13, 2007) ..............19
*Hakeem v. Salaam*, 260 F. App'x 432 (3d Cir. 2008)....................................19
*Hart v. City of Philadelphia*, 779 F. App'x 121 (3d Cir. 2019)...............26, 30
*In re Imerys Talc Am., Inc.*, 38 F.4th 361 (3d Cir. 2022) .........................9, 10
*Jones v. Harrisburg Polyclinic Hosp.*, 437 A.2d 1134 (Pa. 1981)..........20, 21
*Kurian ex rel. Kurian v. Anisman*,
  851 A.2d 152 (Pa. Super. Ct. 2004)................................................19
*Laudenberger v. Port Auth.*, 436 A.2d 147 (Pa. 1981) .................................13
*Liggon-Redding v. Est. of Sugarman*,
  659 F.3d 258 (3d Cir. 2011) ..............................................10, 12, 24
*Pacitti v. Macy's*, 193 F.3d 766 (3d Cir. 1999)...............................................16
*Parham v. Johnson*, 126 F.3d 454 (3d Cir. 1997)....................................22, 28
*Petrus v. United States*,
  No. 16-cv-53, 2022 WL 910263 (D.V.I. Mar. 29, 2022)...............................9
*Radich v. Goode*, 886 F.2d 1391 (3d Cir. 1989).............................................28
*Rainey v. Varner*, 603 F.3d 189 (3d Cir. 2010).........................................7, 23

Cases—continued:

*Robles v. Casey,*
  No. 1:10-cv-2663, 2013 WL 308699 (M.D. Pa. Jan. 25, 2013) ..................18
*Rodriguez v. United States,*
  No. 3:14-cv-1149, 2016 WL 4480761 (M.D. Pa. Aug. 23, 2016)
  *aff'd,* 695 F. App'x 669, 672 (3d Cir. 2017)......................................14, 18, 20
*Schmigel v. Uchal,* 800 F.3d 113 (3d Cir. 2015)..............................................11
*Shelton v. Bledsoe,* 775 F.3d 554 (3d Cir. 2015)........................................1, 24
*Smith v. United States,* 498 F. App'x 120 (3d Cir. 2012) ...............................9
*St. Clair v. PrimeCare Med.,*
  No. 22-cv-49, 2022 WL 4001089 (W.D. Pa. Aug. 3, 2022) ..........................9
*St. Surin v. V.I. Daily News, Inc.,* 21 F.3d 1309 (3d Cir. 1994) ..................28
*United States v. Joseph,* 730 F.3d 336 (3d Cir. 2013) ..................................22
*United States v. Williams,*
  326 F. App'x 656 (3d Cir. 2009) .................................................................24
*Vance v. United States,* 90 F.3d 1145 (6th Cir. 1996) ..................................30
*Vogt v. Wetzel,* 8 F.4th 182 (3d Cir. 2021) .....................................................25
*Williams v. Off. of Dist. Att'y Erie Cnty.,*
  751 F. App'x 196 (3d Cir. 2018) .................................................................30

Statutes and Rules:

Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1) ...........................................11
Federal Rules of Civil Procedure
  26(b)(1) ..........................................................................................................16
  56(d).................................................................................................................3
Pennsylvania Rule of Civil Procedure
  1042.3(a)(3), Note.........................................................................................13

Other Authorities:

App. for Appellant,
  *Hart v. City of Philadelphia,* 779 F. App'x 121 (No. 18-2420) ...............26
10B Charles Alan Wright & Arthur R. Miller,
  Federal Practice & Procedure § 2740 (4th ed.).........................................3

## INTRODUCTION

This appeal presents one straightforward question: did Mr. Wilson substantively and constructively comply with Federal Rule of Civil Procedure 56(d) when he asked for discovery in response to the government's summary judgment motion? He did, so the result is clear. A party filing under Rule 56(d) should be allowed discovery "as a matter of course." *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015) (citation omitted); *see* U.S. Br. 22. And a court necessarily errs by granting summary judgment without even addressing the discovery request, as the district court did here. *Shelton*, 775 F.3d at 568.

The government disagrees with that conclusion for two reasons, but neither is correct. First, the government insists that Mr. Wilson did not need discovery because he is precluded from presenting expert testimony and could not prove his case without it. Citing Mr. Wilson's statements that his medical malpractice claim was obvious, the government (at 26) claims that Mr. Wilson committed to not using expert testimony and thus had no need for discovery to obtain it. But the government ignores the context of those statements: Mr. Wilson made them "under protest," facing dismissal because he lacked a certificate of merit from an expert, which never should have been required in the first place. JA 30. And it overlooks Mr. Wilson's other statements

1

indicating his intention to use expert testimony in later proceedings after discovery.  JA 79.

The government also discounts the importance of discovery of Mr. Wilson's medical records.  It (at 17-18) simply assumes that his records will not contain any relevant, let alone helpful, information for his argument that he can prevail without an expert.  This assumption ignores that courts decide the necessity of expert testimony in malpractice cases only after reviewing evidence, including medical records.

Second, the government (at 22) insists that Mr. Wilson—operating *pro se* below—did not "proper[ly]" request discovery.  But Mr. Wilson's summary judgment response unequivocally and repeatedly asked for discovery, and it included the minimal content required by Rule 56(d).  JA 79-80.  While Mr. Wilson's filing lacked an accompanying declaration or affidavit, this case is a classic example of constructive compliance—particularly because *no* discovery had occurred.

The district court therefore should have delayed ruling on summary judgment until Mr. Wilson had the evidence necessary to respond to the government's motion.  Or, at least, it should have addressed Mr. Wilson's

request for discovery before granting summary judgment. This Court should vacate and remand.

## I. Mr. Wilson Properly Responded to the Government's Summary Judgment Motion by Requesting Discovery

Mr. Wilson's filing met Rule 56(d)'s minimal content requirements. That rule lets parties ask courts to delay ruling on summary judgment simply by showing that for "specified reasons," they "cannot present facts essential to justify [their] opposition." Fed. R. Civ. P. 56(d). The filing must contain only three pieces of information: the "[1] particular information … sought; [2] how, if uncovered, it would preclude summary judgment; and [3] why it has not previously been obtained." *Dowling v. City of Philadelphia*, 855 F.2d 136, 140 (3d Cir. 1988). Parties do not, as the government (at 25-26) suggests, need to proffer what discovery will reveal or outline what "specific steps" they have taken to obtain discovery. They need only identify "the circumstances which hamstring [them] in presenting that proof by affidavit in opposition to the motion." *See* 10B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2740 (4th ed.) (citation omitted). Mr. Wilson did so here.

## A. Mr. Wilson Identified His Need for Expert Testimony and His Medical Records

Mr. Wilson asked for discovery. Complying with Rule 56(d), his response to the government's motion for summary judgment opened by asking the district court "to move forward with discovery." JA 79. And it closed by asking the court to allow "this matter to proceed to the discovery stage." JA 80. Given that context, the rest of Mr. Wilson's filing, fairly read, requests discovery for two pieces of information: expert testimony and his medical records. JA 79.

The government does not dispute that Mr. Wilson identified expert testimony as "particular information" sought, satisfying Rule 56(d)'s first requirement. JA 79. It takes issue, instead, with whether he requested his medical documents and suggests that he possessed those records. *See* U.S. Br. 25 & n.12. But Mr. Wilson explicitly flagged his need for his "medical documents chronicled by the [Bureau of Prisons] while and since the plaintiff has been in its custody," which he believed would bolster his theory that his medical malpractice claim was "patently obvious." JA 79. And it is a stretch to say that his suspicion that his records "obviously state[]" certain facts proves that he already has the documents. JA 30.

As the government (at 25 & n.12) observes, Mr. Wilson did not spell out, "I need these medical records," or "I do not have these documents." But Rule 56(d) does not require any magic words to identify the information sought; it is enough that the filing identifies it. Because the filing requested discovery, claimed the medical records contained critical information, and predicted what those "documents will … show," it should be understood to request discovery of Mr. Wilson's medical records. JA 79.

## B. Mr. Wilson Was Not Precluded from Using Expert Testimony to Later Defeat Summary Judgment

Mr. Wilson's filing also satisfied Rule 56(d)'s second requirement, outlining how discovery would preclude summary judgment. *See Dowling*, 855 F.2d at 140. As to expert testimony, Mr. Wilson noted that the government moved for summary judgment because "without an expert the plaintiff's claim cannot be proven." JA 79. But, he said, he "would love to have an expert attest" to his injury and would be allowed to present a "medical expert … later," following discovery. JA 79. Logically, presenting expert testimony would answer the government's sole basis for summary judgment.

The government (at 26) calls this syllogism "nonsensical." But it never explains why. Nor could it. Put simply, had Mr. Wilson presented expert testimony, the court could not have granted summary judgment on the ground

that he lacked that evidence.  JA 12.  The government's real quibble is not with

whether *presenting* expert testimony at summary judgment would make a

difference (it would).  It is with whether Mr. Wilson would have been *allowed*

to present expert testimony, even if he were given the chance to obtain it

through discovery.

1.    The government (at 26) argues that Mr. Wilson committed to

proceeding without an expert and claims (without citation) that he "could not

change his mind on the theory of the case at the last minute."  This argument

reads Mr. Wilson's statements out of context.

Mr. Wilson stated "under protest" that he could proceed without an

expert only to satisfy the government's repeated insistence that he comply

with Pennsylvania Rule of Civil Procedure 1042.3(a) or else face dismissal.  JA

30.  On the government's view below, Rule 1042.3(a) required him to produce

expert testimony validating his claims or certify that he could prove his case

without it.  Doc. 23 at 4-5.  But given that Rule 1042.3(a) does not apply to Mr.

Wilson, *see infra* pp. 10-13, he never should have been required to make these

statements.

Moreover, despite reluctantly certifying that he *could* proceed without

an expert, Mr. Wilson believed that the next step was discovery, after which

he could present expert testimony. *See* JA 42 (noting that the explanatory note to Rule 1042.3(a)(3) allowed expert testimony in "exceptional circumstances"); JA 79 (stating that the "circumstances around [his case] are so unusual [that he] would satisfy the standard for a medical expert to be available later"). He did not switch theories. He planned to pursue *both* an expert and a *res ipsa loquitur* theory. And even if pursuing both theories is inconsistent, courts tolerate "internal[] inconsisten[cy]" in *pro se* filings. *Rainey v. Varner*, 603 F.3d 189, 200 (3d Cir. 2010).

2. Had Mr. Wilson received discovery, he could have later used expert testimony to oppose the government's summary judgment motion. The government argued below that discovery was futile because Mr. Wilson's certification under Pennsylvania Rule of Civil Procedure 1042.3(a)(3) precluded him from later offering expert testimony to oppose summary judgment. JA 67 n.1, 69 & n.3. That argument was incorrect. Pennsylvania Rule 1042.3(a) does not apply in Federal Tort Claims Act (FTCA) cases. Br. 19-25. In any event, the plain text of that rule would not have precluded Mr. Wilson from offering expert testimony. Br. 25-27.

a. Despite relying on Rule 1042.3(a) below to receive an early grant of summary judgment, the government now asks this Court to avoid deciding the

rule's applicability to Mr. Wilson's case. Because the district court did not definitively rule on the issue, the government asserts, this case does not "turn on the application of Rule 1042.3(a) to plaintiff's FTCA claim." U.S. Br. 30.

But Rule 1042.3(a) plays a central role in this case. The district court granted summary judgment because it believed Mr. Wilson was "proceeding without an expert." JA 8, 12. Why? Because to avoid dismissal for failing to file a Rule 1042.3(a) certificate of merit, Mr. Wilson stated that he *could* proceed without an expert. Had the government not repeatedly insisted that Mr. Wilson comply with Rule 1042.3(a), he never would have made those statements, and the district court would have had no reason to grant summary judgment. The government also cited Rule 1042.3(a)(3)'s explanatory note to argue that discovery was unnecessary since Mr. Wilson's certification precluded him from presenting expert testimony. JA 67 n.1, 69 & n.3. Though the district court did not definitively rule on whether Rule 1042.3(a) applied to Mr. Wilson's case, it accepted the government's argument that he could not offer expert testimony. JA 8-9. Finally, to show his entitlement to discovery, Mr. Wilson needed to show that expert testimony would preclude summary judgment. It thus remains relevant whether Rule 1042.3(a) would have prevented Mr. Wilson from presenting expert testimony later.

The government (at 29) also suggests that this Court should bypass this issue because Mr. Wilson did not challenge below the applicability of Rule 1042.3(a) to his claim. To be clear, Mr. Wilson stated "under protest" that an expert was unnecessary, though he did not specifically argue that Rule 1042.3(a) does not extend to his FTCA claim. This Court should address the issue.

The waiver rule "is one of discretion rather than jurisdiction," and this Court "may overlook waiver where, as here, the public interest is better served by addressing an argument than by ignoring it and addressing that argument does not cause surprise or prejudice to the parties." *In re Imerys Talc Am., Inc.*, 38 F.4th 361, 373 (3d Cir. 2022) (cleaned up). Here, as in *Imerys Talc America*, whether state certificate-of-merit requirements apply in FTCA cases is an "open legal question[]" which has "significant implications" for future litigants. *Id.* This Court has addressed the question only in unpublished opinions, even though it often arises in the district courts. *See, e.g., Smith v. United States*, 498 F. App'x 120, 121-22 (3d Cir. 2012) (per curiam); *St. Clair v. PrimeCare Med.*, No. 22-cv-49, 2022 WL 4001089, at *5 (W.D. Pa. Aug. 3, 2022) (Rule 1042.3(a) applies in FTCA actions); *Petrus v.*

*United States*, No. 16-cv-53, 2022 WL 910263, at *2 (D.V.I. Mar. 29, 2022) (state certificate-of-merit requirement does not apply in FTCA actions).

Further, the district court "on its own initiative addressed the merits" of this argument, even if it did not rule definitively. *See Imerys Talc Am.*, 38 F.4th at 373; JA 8-9 n.2. This Court identified the issue and asked both parties to brief it. App. Doc. 9. The government thus had adequate notice of this purely legal question on appeal, argued it, and will not be prejudiced by this Court considering it.

b. The government maintains that Rule 1042.3(a) is a "substantive state law" and thus applies to Mr. Wilson's FTCA claim. U.S. Br. 31 (citing *Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011)). Yet it still confuses a state "source of substantive liability" (applying in FTCA actions), *see FDIC v. Meyer*, 510 U.S. 471, 478 (1994), with state "substantive law" (applying in diversity cases through *Erie*), *Liggon-Redding*, 659 F.3d at 262. While these categories of law sound similar and sometimes overlap, they are not synonymous. Br. 20-23.

The FTCA incorporates a limited set of state laws. By waiving sovereign immunity "where the United States, if a private person, would be *liable* to the claimant in *accordance with the law of the place where the act or omission*

*occurred*," 28 U.S.C. § 1346(b)(1) (emphases added), Congress instructed federal courts to use state law only to determine "liability." In other words, state law supplies the "cause of action." *CNA v. United States*, 535 F.3d 132, 141 (3d Cir. 2008). The FTCA thus looks to state law to define plaintiffs' rights and defendants' responsibilities. *See Corley v. United States*, 11 F.4th 79, 85 (2d Cir. 2021). Congress did not incorporate procedural rules, which are only means to enforce those rights and obligations. *Id.*

By contrast, federal courts sitting in diversity apply state "substantive law," meaning the state law is "outcome-determinative." *Schmigel v. Uchal*, 800 F.3d 113, 119 (3d Cir. 2015) (citation omitted). When outcome-determinative state laws do not conflict with the Federal Rules of Civil Procedure or interfere with "countervailing federal interests," courts sitting in diversity apply them to "ensure equitable administration in both federal and state courts." *Id.* at 119, 123 (citation omitted). But state laws may be outcome-determinative and thus applicable under *Erie* without being sources of liability. The Second Circuit, for instance, posited a hypothetical where the state "imposed a $10,000 filing fee or required all medical malpractice plaintiffs to file their complaints on fluorescent purple paper." *Corley*, 11 F.4th at 87 (cleaned up). Those procedural laws could affect the outcome in state court by

placing "a procedural roadblock in the path of plaintiffs" leading to early dismissal of plaintiffs' cases, but would have "*no* effect on the standard for substantive liability." *Id.* (emphasis added).

Rule 1042.3(a) is such a law. As this Court recognized in *Liggon-Redding*, a certificate-of-merit requirement may be outcome-determinative. 659 F.3d at 264. But whether plaintiffs submit certificates does not affect the United States' liability for its agents' malpractice—it "neither modifies [the] standard of liability nor elucidates the types of evidence required to establish the standard, its breach, or causality." *Corley*, 11 F.4th at 86. Patients' rights and medical professionals' responsibilities are defined by Pennsylvania common law, not the Pennsylvania Rules of Civil Procedure.

The government has no response. Rather than grapple with Mr. Wilson's arguments, it (at 31-32) urges that Rule 1042.3(a) should apply because *Liggon-Redding* (an *Erie* case) said it was "substantive state law" and the FTCA "incorporates substantive state law." Because *Erie* and the FTCA incorporate separate categories of law, that equation does not work.[1]

---

[1] Alternatively, as other courts of appeals have held about similar state laws, Rule 1042.3(a) does not apply to FTCA actions because it conflicts with the Federal Rules of Civil Procedure. Br. 23-25. But as acknowledged in the

c. The government does not address Mr. Wilson's other reasons for why Rule 1042.3(a) would not keep him from later using expert testimony. An explanatory note to Rule 1042.3(a)(3) says that if "the attorney certifies under subdivision (a)(3) that an expert is unnecessary," "the attorney is bound by the certification" and the plaintiff cannot present expert testimony later absent "exceptional circumstances." Pa. R. Civ. P. 1042.3(a)(3), Note. But Mr. Wilson noted that Rule 1042.3(a) itself says nothing about precluding expert testimony if litigants certify under (a)(3). Br. 25-26. And explanatory notes do not bind courts. *Laudenberger v. Port Auth.*, 436 A.2d 147, 151 (Pa. 1981). No response.

Even if the explanatory note *is* binding, its plain language precludes expert testimony only when an "*attorney* certifies … that an expert is unnecessary." Pa. R. Civ. P. 1042.3(a)(3), Note (emphasis added). Rule 1042.3 consistently distinguishes between "the attorney" and the unrepresented "plaintiff." *See Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 410 (Pa. 2021). And (a)(3)'s explanatory note addresses only "the attorney,"

---

opening brief (at 23), this argument diverges from this Court's holding in *Liggon-Redding* and can only be addressed *en banc*.

not a *pro se* party. That means that *pro se* plaintiffs like Mr. Wilson can offer expert testimony if they obtain it. Br. 26-27. Again, no response.

Finally, Mr. Wilson has consistently maintained that he could still use expert testimony because he would satisfy the note's exception for "exceptional circumstances."[2] JA 79; Br. 27. Because the case never proceeded to discovery, and Mr. Wilson never tried to introduce expert evidence despite his (a)(3) certification, he never had the chance to argue that he met this standard. The government offers no real response, just saying that this "Court does not need to decide" whether Mr. Wilson presented exceptional circumstances. U.S. Br. 28 n.14.

At most, through a *cf.* citation, it suggests that Mr. Wilson could not show "exceptional circumstances" because "*pro se* status does not 'constitute an exceptional circumstance.'" *Id.* (quoting *Rodriguez v. United States*, No. 3:14-cv-1149, 2016 WL 4480761, at *5 (M.D. Pa. Aug. 23, 2016)). But Mr. Wilson cited the "global pandemic"—not his *pro se* status—as the "exceptional

---

[2] Mr. Wilson made this argument before the district court and in his opening brief before this Court. JA 79; Br. 27. Thus, even if this Court holds that Mr. Wilson waived his challenge to the applicability of Rule 1042.3(a) to his FTCA claim, he has *not* waived his argument that he could have defeated summary judgment by later presenting expert testimony through the "exceptional circumstances" exception.

circumstance[]" that would allow expert testimony despite his (a)(3) certification.  JA 79.

For many reasons, then, Mr. Wilson would have been allowed to offer expert testimony following discovery.  And because simply offering expert testimony would defeat the government's sole ground for summary judgment, he met Rule 56(d)'s minimal requirement that he show that evidence, if uncovered in discovery, would preclude summary judgment.

### C.     Mr. Wilson Needed His Medical Records to Respond to the Government's *Res Ipsa Loquitur* Argument

Mr. Wilson's filing emphasized the importance of his medical records. Complying with Rule 56(d), he stated that the records would show that his injuries and their cause were "obvious," *see* JA 79, thus enabling him to proceed under a *res ipsa loquitur* theory and precluding summary judgment. Yet the district court decided that Mr. Wilson could not satisfy *res ipsa loquitur*—the applicability of which even the government (at 15) concedes "turn[s] on the facts" of "the individual case"—without considering what his medical records might show or the effect of their absence.  The court's decision was premature, as discovery may have allowed Mr. Wilson to defeat the government's motion.

1. The government (at 17-18) insists that Mr. Wilson's case, involving the spread of cancer and serious surgery after lengthy delays in diagnosis and treatment, is sufficiently complex to require an expert.[3] But Mr. Wilson did not ask the court to "presume or infer negligence because a medical procedure" had an "unfortunate result." *Cf.* U.S. Br. 18 (citation omitted). Mr. Wilson's claims center on the fact that for months, he received no medical treatment at all. Even the district court acknowledged that a lay jury could understand that the detention center's staff unreasonably delayed diagnosing Mr. Wilson. JA 11. Just as "[i]t is within a layperson's purview to know that when a serious infection … is diagnosed and an antibiotic is prescribed, … delay in supplying the antibiotic can result in unnecessary pain, discomfort and

---

[3] The government (at 13 n.6) urges this Court to ignore Mr. Wilson's claims about the spread of his cancer, his abdominal surgery, and the loss of his reproductive functions because the injury alleged in his complaint was only the removal of his testicle. This reflects an uncharitable reading of the complaint. Mr. Wilson alleged that his testicle was removed *and* that his "fast growing" condition resulted in "los[t] … procreation capabilities." JA 18-19. His later filings provided details that "elaborate[], but do[] not change the theory on which the complaint was brought" and thus may be treated as "part of the record." *Gibson v. United States*, 457 F.2d 1391, 1394 (3d Cir. 1972). Mr. Wilson is certainly entitled to discovery on these claims, as they are relevant and related to his complaint's initial allegations. *See* Fed. R. Civ. P. 26(b)(1); *Pacitti v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999) ("[T]he federal rules allow broad and liberal discovery.").

a spreading of the infection," *Gil v. Reed*, 381 F.3d 649, 661 (7th Cir. 2004), so too could a layperson infer that delay in diagnosing and treating Mr. Wilson's cancer resulted in injury.

Further, because results of a complicated procedure are not at issue, it is possible that Mr. Wilson's medical records could supply understandable information a jury could use to infer negligence. The jury may be able to consult digestible details from his medical records, with its background common knowledge of the importance of treating suspicious lumps quickly, and infer that Mr. Wilson's injuries would not have occurred absent negligence. Neither the district court nor the parties could know one way or another without seeing the records.

2. But the government (at 26-27) argues that Mr. Wilson's medical records were unnecessary, suggesting that courts need not have a "full record" before deciding whether a plaintiff needs an expert. The government's cited cases (at 17-18) undercut that claim. While these courts did require expert testimony in cases of delayed diagnosis or treatment, they did so only after considering record evidence.

In *Rodriguez v. United States*, the district court examined the parties' statements of fact *and* the plaintiff's medical records that the government

attached to its summary judgment motion before concluding that the issues were "complicated and require[d] medical judgment." 2016 WL 4480761, at *6, *aff'd*, 695 F. App'x 669, 672 (3d Cir. 2017) (affirming on the district court's reasoning). And in *Cuevas v. United States*, the government also attached the plaintiff's medical records to its summary judgment motion. No. 09-cv-43J, 2013 WL 4500470, at *2 & n.1 (W.D. Pa. Aug. 21, 2013), *aff'd*, 580 F. App'x 71 (3d Cir. 2014). After examining "substantial evidence in the record," including physicians' notes in the medical records, the court determined that the plaintiff's injury potentially arose from causes beyond the defendant's inaction. *Id.* at *2-7, 11. The plaintiff thus could not proceed under *res ipsa loquitur*. *Id.*; *see also Robles v. Casey*, No. 1:10-cv-2663, 2013 WL 308699, at *7-8 (M.D. Pa. Jan. 25, 2013) (finding expert testimony necessary "[a]fter reviewing the record evidence," including medical records).[4]

Even the courts confronting more complex medical procedures considered record evidence before rejecting *res ipsa loquitur* arguments. For instance, when a plaintiff alleged that a hospital negligently placed an endotracheal tube in his throat, the district court deemed it "inappropriate to

---

[4] The government has not explained why it did not attach Mr. Wilson's medical records to its summary judgment motion, as it has done in other cases.

dismiss" his claims "prior to discovery." *Hakeem v. Salaam*, 260 F. App'x 432, 433 (3d Cir. 2008) (per curiam). Only after considering medical records and the defendant's unrebutted expert report did the court hold that the plaintiff needed expert testimony. *Hakeem v. Salaam*, No. 3:03-cv-0098, 2007 WL 9757509, at *2-5 (M.D. Pa. Mar. 13, 2007), *aff'd*, 260 F. App'x at 434.

In *Kurian ex rel. Kurian v. Anisman*, a case involving the allegedly negligent repair of a child's heart and lungs, the court required an expert, and thus granted summary judgment, only after examining the treating physician's medical notes. 851 A.2d 152, 155-56 (Pa. Super. Ct. 2004). And in two other cases, the courts entered compulsory nonsuits for lack of expert testimony following the plaintiffs' presentations of their evidence at trial. *Donaldson v. Maffucci*, 156 A.2d 835, 837-39 (Pa. 1959) (reduction of wrist fracture); *Gallegor v. Felder*, 478 A.2d 34, 36-37 (Pa. Super. Ct. 1984) (nerve damage during surgery).

The government (at 26-27) replies that medical testimony is relevant only in certain *res ipsa loquitur* cases. The doctrine permits plaintiffs to proceed with circumstantial proof where (1) there is a "fund of common knowledge from which laymen" can infer negligence, or (2) "expert medical testimony" establishes that the "event would not ordinarily occur absent

19

negligence." *Jones v. Harrisburg Polyclinic Hosp.*, 437 A.2d 1134, 1138 (Pa. 1981). The government (at 27) emphasizes that only the second option calls for medical *testimony*, seemingly suggesting that because Mr. Wilson is proceeding under the first option, he does not need his medical *records*. Not true. To decide whether plaintiffs have satisfied the common-knowledge option, courts consult evidence garnered during discovery, including medical records. Indeed, the plaintiffs in the government's cited cases argued that the first *res ipsa loquitur* avenue applied—and the courts still examined medical records and treating physicians' notes. *See, e.g.*, *Rodriguez*, 2016 WL 4480761, at *5-6.

3. The government (at 24-25 & n.12) incorrectly downplays the relevance of the substance of Mr. Wilson's records, implying that they merely contain information within his own knowledge. The government overlooks that medical records contain information outside the patient's knowledge such as his treating doctors' notes. And the records may buttress the allegations that the government disputes, such as that Mr. Wilson had a grapefruit-sized lump or that the doctor told Mr. Wilson his cancer "should have been treated earlier for best results." JA 17-18, 55-56. If notes like that appear in his records, they could be the "evidence" that "sufficiently eliminate[s]" causes

other than the delayed diagnosis and treatment. *Jones*, 437 A.2d at 1137 (citation omitted).

Further, pointing to Mr. Wilson's statements that various facts are undisputed, the government (at 20, 24-25) contends that his records would add nothing new and so would not preclude summary judgment. While Mr. Wilson did acknowledge that the government admitted facts underlying his claim and reflected in his records, he also emphasized that his records would show that his injuries and their cause were obvious, JA 79-80—thus refuting the government's primary theory. His response did not imply that he did not need his records.

Finally, the government (at 25) claims that Mr. Wilson forfeited his argument that his medical records could defeat summary judgment. Not so. In response to the government's argument on summary judgment that he could not rely on *res ipsa loquitur*, Mr. Wilson noted that his records would allow him to proceed without an expert. *See* JA 79 (the medical records "will show" the "*obvious*" nature of his claims and that the government's actions "*clearly* … violat[ed]" the law (emphases added)). Mr. Wilson, with the benefit of counsel, has now simply elaborated on that argument. Even non-*pro se* litigants may "place greater emphasis and more fully explain an argument on

appeal than they did in the District Court" without forfeiting the argument. *See United States v. Joseph*, 730 F.3d 336, 341 (3d Cir. 2013).

### D. Mr. Wilson Identified the COVID-19 Pandemic as the Primary Obstacle in Obtaining Discovery

Mr. Wilson satisfied Rule 56(d)'s third requirement by explaining that COVID-19 impeded his ability to take discovery. The government does not and cannot contest the pandemic's impact. Instead, the government (at 27) insists that Mr. Wilson would still struggle with discovery today because of "his own incarceration" and "financial constraints."

To be sure, the discovery process was and may remain difficult for Mr. Wilson, as it is for all indigent prisoners. *See Parham v. Johnson*, 126 F.3d 454, 460 (3d Cir. 1997). That said, Mr. Wilson's troubles were exacerbated by COVID-19. His summary judgment response explained that the pandemic prevented an expert from visiting him in prison, or from being interviewed at a hospital or clinic. JA 79. Though he mentioned his lack of financial means in his summary judgment response and earlier filings, he identified the pandemic as his main stumbling block. JA 79 ("[A] medical expert is unable to be obtained due to a global pandemic."); JA 32; Doc. 30 at 2.

Mr. Wilson also had legitimate reasons for not seeking discovery in the few months between filing his complaint and the pandemic's start. Only

months before the pandemic hit, the government notified Mr. Wilson of its intent to move to dismiss because he had not filed a certificate of merit. JA 25. And Mr. Wilson needed those months not only to search for an expert but also to decide how to respond to the government's insistence that he submit the certificate. *E.g.*, Doc. 10.

Mr. Wilson knows what discovery he needs, and the pandemic no longer thwarts his access to the prison library or an expert's access to him in prison. Mr. Wilson's pandemic and limited pre-pandemic experiences with discovery are thus not representative of his abilities now, should this Court remand.

***

Mr. Wilson thus satisfied each requirement of Rule 56(d): he identified the information sought, averred that this information would preclude summary judgment, and explained that he had not obtained this information due to the global pandemic. Though the government attacks (at 24-26) Mr. Wilson's filing as lacking specificity, Rule 56(d)'s requirements are minimal and the statements in his response met each prong. While the filing did not cite Rule 56(d) or specify which statements applied to particular prongs, this Court instructs that *pro se* filings should be read generously, focusing on what they can "fairly be read" to say, *see Rainey*, 603 F.3d at 200, even if they "lack

focus and clarity," *United States v. Williams*, 326 F. App'x 656, 657 (3d Cir. 2009) (per curiam); *see also Liggon-Redding*, 659 F.3d at 265. That does not mean, as the government (at 28) contends, that Mr. Wilson is using his *pro se* status to evade Rule 56(d)'s substantive requirements. He met those requirements. He simply urges this Court not to overlook the substance of his filing because it lacked the clarity that the government prefers.

## II. The District Court Incorrectly Ignored Mr. Wilson's Request for Discovery and Prematurely Granted Summary Judgment

When the government moved for summary judgment, the parties had not yet taken any discovery. Naturally, in his summary judgment response, Mr. Wilson explicitly sought discovery. JA 79-80. His request, which constructively complied with Rule 56(d), should have been granted "as a matter of course," *see Shelton*, 775 F.3d at 568 (citation omitted), particularly because he never had "an adequate opportunity" for discovery, *Dowling*, 855 F.2d at 139. Instead, the district court did not even acknowledge his request, let alone resolve it, before granting summary judgment. This was an abuse of discretion. *See Shelton*, 775 F.3d at 568.

Incredibly, the government (at 19-20) contends that Mr. Wilson never argued that the district court should have deferred deciding the summary judgment motion, either in his summary judgment response or in a post-trial

motion, and thus forfeited that argument.  But Mr. Wilson responded to the government's motion by asking to "move forward with discovery"—not to trial—and identifying the information he needed.  JA 79.  It is hard to see what more he needed to say to preserve this argument.  To be sure, Mr. Wilson did not mention Rule 56(d).  U.S. Br. 19.  Still, "courts must apply the applicable law, even if a pro se litigant failed to mention it by name."  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  And once litigants have asked for discovery in response to summary judgment, this Court has never required them to renew that request in a post-trial motion.  *See, e.g.*, *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256-59 (3d Cir. 2007).

### A.     Mr. Wilson Did Not Have an Adequate Opportunity to Take Discovery

Parties opposing summary judgment must have "an adequate opportunity to obtain discovery."  *Dowling*, 855 F.2d at 139.  The government (at 21) argues that Mr. Wilson had that opportunity during the nearly three years between the case's start and entry of judgment.  Time that the case is pending, though, is not dispositive.  In *Hart v. City of Philadelphia*—which the government conspicuously ignores—the panel held that the district court erred in granting summary judgment without giving the plaintiff discovery even though the defendant moved for summary judgment nearly four years

into litigation. 779 F. App'x 121, 128 (3d Cir. 2019) (per curiam); App. for Appellant at 36, 46, 779 F. App'x 121 (No. 18-2420). And there, the defendant answered the complaint 20 months before moving for summary judgment, App. for Appellant at 43, unlike here where the government filed its answer and summary judgment motion on the same day. Yet the panel did not fault the plaintiff for not using those four years for discovery; instead, because "*no discovery* took place before the District Court granted summary judgment," it held that the court "abused its discretion in not heeding" his discovery request. *Hart*, 779 F. App'x at 128-29.

More importantly, the government fails to fully describe what happened in Mr. Wilson's case during the three years it was pending. Mr. Wilson spent much of the first year trying to research and comply with the certificate-of-merit requirement; the onset of the pandemic complicated that effort. *See* Docs. 10, 13, 21. During that time, he tried to retain an attorney, both on his own and by requesting court-appointed counsel. Docs. 18, 21. The court, recognizing the pandemic's effect, stayed deadlines for months and offered Mr. Wilson extensions to file the certificate of merit. Docs. 17, 19. During this preliminary stage, marked by the global health crisis, it is understandable that Mr. Wilson did not begin sending discovery requests.

Indeed, Mr. Wilson's filings confirm that he expected the discovery stage to come later. In October 2020, the court denied Mr. Wilson's motion for court-appointed counsel and ordered him to take a position on the certificate of merit. Doc. 22. He quickly complied, certifying that he could proceed without an expert and noting that this filing "allows the case to proceed to discovery." JA 29, 42. The government then filed its answer, *see* JA 53—the typical point at which discovery begins. Instead, the government moved for summary judgment that same day. JA 84. Mr. Wilson's response asked to "move forward with discovery." JA 80. The court, recognizing the case's complexity, reconsidered Mr. Wilson's request for court-appointed counsel and postponed all deadlines. Doc. 31. The case then sat for a year on the *pro bono* panel. *See* Docs. 32, 41. The district court never set a discovery schedule.

After Mr. Wilson agreed to move forward without counsel, the court allowed him to file "any additional submissions related to the pending motion for summary judgment." Doc. 41. But Mr. Wilson had already filed his response requesting discovery, which had yet to be addressed by the court, so he did not submit anything further.

That Mr. Wilson's case was pending for three years thus does not automatically mean that he had an adequate opportunity to obtain discovery.

Between the time researching the certificate-of-merit requirement and seeking counsel, and the stayed deadlines during the pandemic, it is unsurprising that Mr. Wilson, proceeding *pro se* from prison, did not "file interrogatories [or] submit document requests." U.S. Br. 21; *see Parham*, 126 F.3d at 460. And though Mr. Wilson did not "ask the court to set up a discovery schedule," U.S. Br. 21, he did ask (immediately after the government filed its answer) to "move forward with discovery," JA 79. Because the district court failed to grant that request, Mr. Wilson never received an adequate chance to take discovery.

### B.    Mr. Wilson Constructively Complied with Rule 56(d)

Though Mr. Wilson did not file an affidavit or declaration as Rule 56(d) requires, that "is not automatically fatal" to consideration of his discovery request. *St. Surin v. V.I. Daily News, Inc.*, 21 F.3d 1309, 1314 (3d Cir. 1994). In "exceptional cases," courts may find that litigants constructively complied with the rule. *Bradley v. United States*, 299 F.3d 197, 207 (3d Cir. 2002). Mr. Wilson's case is exceptional. His filing satisfied the rule's three substantive requirements. *See supra* pp. 4-24. It identified only relevant and necessary discovery, *see supra* pp. 5-6, 15-22; *cf. Bradley*, 299 F.3d at 207 n.12, and he was hardly derelict in pursuing it, *see supra* pp. 22-28; *cf. Radich v. Goode*, 886

F.2d 1391, 1394-95 (3d Cir. 1989). Most notably, Mr. Wilson had yet to receive *any* discovery. The district court thus erred by granting summary judgment before considering Mr. Wilson's discovery request.

The government (at 22-23) still points to the missing affidavit to argue that the district court did not abuse its discretion, disagreeing (at 24, 28) that this case is "exceptional." But its reasons either misunderstand or do not address Mr. Wilson's arguments.

The government (at 23) argues that the district court was not required to inform Mr. Wilson about Rule 56(d)'s requirements. Contrary to the government's suggestion, Mr. Wilson does not urge this Court to create a new, *per se* notice rule for district courts. Rather, Mr. Wilson explained that at a time when he would not have expected his discovery period to soon close, he received no notice of the consequences of not filing a proper Rule 56(d) affidavit. Br. 38-39. This lack of notice contributed to the exceptional circumstances strengthening his case for constructive compliance. Further, the government (at 24) points to a nonprecedential decision rejecting a *de facto* requirement that courts notify *pro se* plaintiffs about Rule 56(d)'s requirements. But this case hurts the government. The panel rejected a notice rule in part because there was no "question that [the plaintiff] was

provided an opportunity for discovery." *Williams v. Off. of Dist. Att'y Erie Cnty.*, 751 F. App'x 196, 199 (3d Cir. 2018). The same was not true for Mr. Wilson.

Moreover, the government has no response to *Hart*, a case on all fours with this case. Although Hart, a *pro se* litigant, did not submit a Rule 56(d) affidavit with his summary judgment response, he "specified the facts he wanted to explore through discovery and explained why he otherwise lacked access to that information." *Hart*, 779 F. App'x at 128. So did Mr. Wilson.

And because "*no discovery* took place" before summary judgment, the panel held that "exceptional circumstances" excused Hart's technical noncompliance. *Id.* The district court thus "abused its discretion in not heeding Hart's request to allow him to conduct discovery." *Id.*; *see also Vance v. United States*, 90 F.3d 1145, 1149 (6th Cir. 1996) (reversing the district court's denial of discovery despite the plaintiff's noncompliant Rule 56(d) filing, where "*no* discovery was conducted" before summary judgment). The same is true here. Mr. Wilson, proceeding *pro se*, asked the district court for discovery before summary judgment after no discovery had occurred. This Court should hold that Mr. Wilson constructively complied with Rule 56(d), and as in *Hart*, vacate and remand for discovery.

# CONCLUSION

The district court's decision should be vacated and remanded with instructions for the case to proceed to discovery or, alternatively, for the district court to address Mr. Wilson's Rule 56(d) filing.

Respectfully submitted,

June 2, 2023

Kari M. Lorentson
Claire R. Cahill
   (D.C. Bar No. 90003724)
   *Counsel of Record*
Julia E. Fine
Williams & Connolly LLP
   *680 Maine Avenue SW*
   *Washington, DC 20024*
   *(202) 434-5000*
   *ccahill@wc.com*

***Court-Appointed Pro Bono***
***Counsel for Appellant***

# CERTIFICATES OF BAR MEMBERSHIP

I, Kari M. Lorentson, court-appointed pro bono counsel for appellant Marquis Wilson, hereby certify pursuant to Third Circuit Rule 28.3(d) that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

/s/ Kari M. Lorentson
KARI M. LORENTSON

I, Claire R. Cahill, court-appointed pro bono counsel for appellant Marquis Wilson, hereby certify pursuant to Third Circuit Rule 28.3(d) that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

/s/ Claire R. Cahill
CLAIRE R. CAHILL

I, Julia E. Fine, court-appointed pro bono counsel for appellant Marquis Wilson, hereby certify pursuant to Third Circuit Rule 28.3(d) that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

/s/ Julia E. Fine
JULIA E. FINE

# CERTIFICATES OF COMPLIANCE WITH TYPEFACE, WORD-COUNT, ELECTRONIC BRIEF, AND VIRUS-CHECK REQUIREMENTS

I, Claire R. Cahill, certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,497 words, excluding those portions excluded by Fed. R. App. P. 32(f);

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in the proportionally spaced typeface using Microsoft Word 2019 in Century Expanded BT, size 14;

3. The text of the electronic brief filed via ECF is identical to the text of the paper copies that will be delivered to the Court.

4. The electronic copy of this brief filed using this Court's CM/ECF system was scanned for viruses using the Symantec Endpoint Protection version 14.2, and no viruses were detected.

/s/ Claire R. Cahill
CLAIRE R. CAHILL

June 2, 2023

## CERTIFICATE OF SERVICE

I, Claire R. Cahill, court-appointed pro bono counsel for appellant Marquis Wilson and a member of the Bar of this Court, certify that, on June 2, 2023, a copy of the attached Brief of Appellant was filed with the Clerk and served on the parties through the Court's electronic filing system. I further certify that all parties required to be served have been served.

*/s/ Claire R. Cahill*

CLAIRE R. CAHILL

June 2, 2023